# In the United States Court of Federal Claims

**No. 20-926C**
**Filed: May 31, 2022**
**Reissued for Publication: June 26, 2022[1]**

* * * * * * * * * * * * * * * **

| | |
|---|---|
| **AGMA SECURITY SERVICE, INC.,** | * |
| | * |
| | * |
| **Protestor,** | * |
| | * |
| **v.** | * |
| | * |
| **UNITED STATES,** | * |
| | * |
| **Defendant,** | * |
| | * |
| **v.** | * |
| | * |
| **RANGER AMERICAN OF PUERTO RICO,[2]** | * |
| | * |
| **Defendant-Intervenor.** | * |

* * * * * * * * * * * * * * * **

**Alan Grayson, Esq.**, Windermere, FL for protestor.

**Kara M. Westercamp**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With her were **Elizabeth M. Hosford**, Assistant Director, Commercial Litigation Branch, **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brian M. Boynton**, Principal Deputy Assistant Attorney General, Civil Division. **Matthew Lane**, Office of Chief Counsel, Procurement and Fiscal Legal Division, Federal Emergency Management Agency, of counsel.

**Todd M. Garland,** Smith Pachter McWhorter PLC, Tysons Corner, VA for intervenor. With him was **Jonathan D. Shaffer**, Smith Pachter McWhorter PLC, Tysons Corner, VA.

---

[1] This Opinion was issued under seal on May 31, 2022. The parties were given the opportunity to propose possible redactions, but no redactions were proposed. The original Opinion is hereby unsealed and reissued without redaction.

[2] The intervenor, Ranger-American of Puerto Rico (Ranger), did not participate in the proceedings related to the attorneys' fees request considered in this Opinion.

**O P I N I O N**

**HORN, J.**

The attorneys for AGMA Security Service, Inc. (AGMA) in the above captioned case, <u>AGMA Security Service, Inc. v. United States</u>, No. 20-926C, filed an application, pursuant to Rule 54(d) of the Rules of the United States Court of Federal Claims (RCFC) (2021), for attorneys' fees and other expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C.A. § 2412 (2019).[3] In <u>AGMA Security Service, Inc. v. United States</u>, 152 Fed. Cl. 125 (2020) (<u>AGMA I</u>), this court issued an Opinion on the merits of AGMA's bid protest case, contesting FEMA's award to Ranger, which granted protestor's motion for judgment on the Administrative Record and granted an injunction, effective Friday, January 8, 2021. This court also denied defendant's and intervenor Ranger's motion for judgment on the Administrative Record. Protestor AGMA also had successfully protested the award of a bridge contract to Ranger in <u>AGMA Security Service, Inc. v. United States</u>, 152 Fed. Cl. 706 (2021), which is not at issue in the current request for fees and other expenses. The proceedings in this court also were preceded by protests to the United States Government Accountability Office (GAO).

**FINDINGS OF FACT**

The facts of AGMA's protest in Case No. 20-926C were detailed in the court's earlier Opinion, <u>AGMA I</u>, 152 Fed. Cl. 125, and are incorporated into this Opinion. Only certain facts most relevant to the protestor's attorneys' EAJA request are repeated below. On November 19, 2019, FEMA issued Request for Proposal No. 70FBR220R000000002 (the RFP). <u>See</u> <u>id.</u> at 130. The RFP indicated that "[t]his requirement is for contracted Protective Service Officers (PSO) and Patrolled Services to safeguard federal employees, visitors and property at both temporary and fixed facilities during disaster and emergency declarations for DR-4339 (all counties and municipalities within the Commonwealth of Puerto Rico)." <u>Id.</u> The RFP stated that the "Government intends to award a Labor Hour type contracts [sic] resulting from this solicitation to be the most advantageous to the Government, price and other factors considered. Award will be made to the responsive, responsible contractor who [sic] provides the best-valued solution to the Government." <u>Id.</u> (alteration in original). The RFP provided for a one year period of performance followed by a one-year option period. <u>See</u> <u>id.</u> The RFP stated that "[t]he acquisition will be conducted using Best Value as the evaluation methodology." <u>Id.</u> On March 3, 2020, after evaluating the proposals received, including those from the protestor AGMA and from intervenor Ranger, the Source Selection Evaluation Board (SSEB) issued an initial Award Decision Memorandum in which the SSEB concluded:

> AGMAs [sic] overall rating is satisfactory on both technical and past performance. Although Ranger received a rating of Good. [sic] Contracting

---

[3] The EAJA statute at 28 U.S.C. § 2412 was modified in 2019 by Public Law No. 116-9, 133 Stat 580 (2019). The modifications to EAJA, however, are not relevant to this Opinion.

> Officer determined that there was no rational [sic] that substantiates paying a higher price to Ranger when the same services could be provided from AGMA . . . . AGMA's proposal offers the best overall value to the Government and price is determined to be fair and reasonable.

Id. at 140–01 (alterations added). On March 13, 2020, FEMA awarded the contract to AGMA and ten days later, on March 23, 2020, Ranger filed a protest at the United States Government Accountability Office (GAO). At the GAO, Ranger alleged that "FEMA had not properly evaluated the Technical Factors, and further argued that FEMA had not conducted a proper trade-off and best-value determination." Id. at 141. In response to Ranger's protest, on April 13, 2020, FEMA requested that the GAO dismiss the protest because

> after careful consideration of the protestor's [Ranger] allegations and the procurement record, FEMA has decided to take corrective action. This corrective action will consist of a reevaluation of the protester's and awardee's proposals as well as a new award decision. FEMA may also take any other corrective action it deems appropriate. Due to the Agency's corrective action, the bases for the protest are no longer valid and, therefore, this protest is academic and should be dismissed. *General Dynamics Mission Sys., Inc.*, B-414587, B-414587.2, May 11, 2017, 2017 CPD ¶ 142 at 1. For the reasons set forth above, FEMA respectfully requests that you dismiss Ranger American of Puerto Rico's protest in its entirety.

AGMA I, 152 Fed. Cl. at 142 (alteration added).

On April 15, 2020, the GAO issued a decision which stated in part: "We dismiss the protest based on the corrective action taken by the agency." Ranger American of Puerto Rico, Inc., B-418598.1 (Comp. Gen. Apr. 15, 2020). This court, in AGMA I, discussed what had occurred after the GAO proceedings:

> The contracting officer thereafter reevaluated the proposals and conducted a new best value trade-off analysis based on the SSEB's ratings of the proposals. As with the initial award decision memorandum, in the corrective action award decision memorandum (revised award decision), the contracting officer largely adopted the SSEB's technical findings. In other words, the board did not meet again to conduct a new technical evaluation of AGMA's and Ranger's proposals. The contracting officer, did, however, change Ranger's prior Good rating for past performance (seemingly a typo by the SSEB because it was not an available adjectival rating in the RFP), to Superior. She also modified the score of "4" to "3" for Ranger's past performance, which was the value

> corresponding to a Superior rating. Ranger's overall numerical rating was thus reduced to "15" from "16."

(internal citations omitted).

> On June 15, 2020, the contracting officer issued a Revised Award Decision Memorandum, albeit without seeking revised proposals. In the Revised Award Decision Memorandum, the contracting officer indicated that

>> The Solicitation stated that technical factors would be more important than price. Offeror 6 (Ranger) had a 50% higher technical score than AGMA and only a 20% higher price. Ranger had a higher rating with regard to Project Management Plan, Quality Control Plan, and Past Performance. While Offeror 2's (AGMA) proposal was perfectly adequate, Offeror 6's (Ranger) was significantly better.

AGMA I, 152 Fed. Cl. at 147. The contracting officer concluded that "Ranger's proposal is significantly stronger and offers the best-valued solution to the Government, and the price is determined to be fair and reasonable." See id. On June 15, 2020, the contracting officer made the award of contract No. 70FBR220C0000001 to Ranger and on June 23, 2020, FEMA terminated for convenience the contract previously awarded to AGMA. See id. at 146.

On July 29, 2020, AGMA filed a bid protest complaint in this court, the above captioned Case No. 20-926C, as well as a motion for injunctive relief. See id. In this court, AGMA alleged that, in the revised award, "'FEMA improperly accepted Ranger's certification as a local firm, and FEMA should have rejected Ranger's proposal on this basis." Id. at 148. According to protestor, "[t]his action was a violation of the Stafford Act and FAR Subpart 26.2 provisions regarding local-firm set-asides, related procurement law and the APA.'" AGMA I, 152 Fed. Cl. at 148 (alteration added). AGMA also alleged that "'after Ranger's protest, FEMA improperly reevaluated the Ranger and AGMA proposals, and decided to terminate the AGMA Contract and make award to Ranger.'" Id.

With regard to AGMA's Stafford Act claim, this court found that "Ranger American of Puerto Rico's representations were sufficient to meet the requirements of the Stafford Act and FEMA acted reasonably to rely on those representations." Id. at 154. This court then addressed "FEMA's actions after the corrective action." See id. at 155. This court stated that the court was "not able to conclude that FEMA used a different basis to re-evaluate the proposals after the corrective action than was used prior to the GAO dismissal, notwithstanding the award to Ranger American of Puerto Rico instead of to AGMA." Id. at 169. The court determined, however, that

at no point, after the corrective action was undertaken did the contracting officer explain why the corrective action and the revised evaluations were occurring, why revisions of proposals were not required by the agency, why particular evaluation revisions were undertaken by the agency, or what was wrong with the previous evaluation. Taken as a whole, the actions taken by the contracting officer after the corrective action are considered by the court to be arbitrary and capricious.

Id. This court's Opinion also stated:

The court notes that protestor raises a number of claims about the evaluation by the contracting officer, which occurred in both the initial evaluation and the revised evaluation. For example, protestor argues that "[t]he agency failed to evaluate past performance in accordance with the Solicitation," and states that "FEMA scored Ranger's Quality Control Plan as 'Good,' even though it never used that term to describe the strengths of Ranger's Plan. FEMA scored AGMA's Quality Control Plan as merely 'Satisfactory,' even though it uses the term 'good,' twice, to describe the strengths of AGMA's Plan." (internal references omitted). In response, defendant notes that "although AGMA alleges that the SSEB should have rated its quality control and past performance more favorably, the corrective action did not re-assess either of these factors and AGMA's adjectival ratings remained unchanged." (internal references omitted). Protestor states:

The Government defends this record of numerous evaluation errors by observing that AGMA "did not challenge its ratings after FEMA initially made award to it" – an argument that the Government makes repeatedly in response to the FEMA evaluation errors that are reflected in the record. That is true, but requiring an awardee to protest an award to itself would represent a dramatic change in procurement law.

(internal reference omitted). As the court has determined that it was arbitrary and capricious for the agency to make the revised award to Ranger American of Puerto Rico, the court does not need to reach the issue of protestor's additional challenges, or whether or not protestor was obligated to raise its concerns prior to the award to Ranger American of Puerto Rico.

Id. at 170. After determining that FEMA had acted without a rational basis, this court then evaluated whether "the bid protestor was prejudiced by that conduct." Id. at 160–61 (citing Bannum, Inc., v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005), T Square Logistics Servs. Corp. v. United States, 134 Fed. Cl. 550, 555 (2017), and Archura LLC v. United States, 112 Fed. Cl. 487, 496 (2021)).

In AGMA I, this court found that AGMA had a substantial chance of award because, as noted "in the Revised Award Decision Memorandum, AGMA had the second highest number total in the numerical rating chart behind only Ranger American of Puerto Rico." Id. at 171. The court found, therefore, that the "best value trade-off analysis demonstrates that there was a substantial chance of AGMA receiving the award, but for the errors in the procurement process." Id. at 172. As such, on December 29, 2020, this court granted protestor's motion for injunctive relief. As noted above, the injunction was effective as of January 8, 2021. On January 27, 2021, AGMA's attorneys filed an initial EAJA fees request, and filed a supplemental brief regarding attorneys' fees on January 29, 2021. In response, on February 24, 2021, defendant filed a motion to dismiss AGMA's EAJA request as premature "because the Court's December 29, 2020 judgment has not become final; indeed, defendant-intervenor, Ranger-American of Puerto Rico, Inc. (Ranger), filed a notice of appeal today." This court agreed with defendant, finding that because "intervenor filed an appeal in the above-captioned protest, the result is final judgment cannot be entered until all appeals are resolved." This court, therefore, granted defendant's motion to dismiss the initial attorneys' fees request, without prejudice. After Ranger filed an appeal to the United States Court of Appeals for the Federal Circuit, Case No. 21-1716, on February 24, 2021, Ranger filed an unopposed motion to voluntarily dismiss its appeal, which the Federal Circuit granted on September 1, 2021. Thereafter, AGMA's attorneys filed a renewed request for attorneys' fees in this court on September 17, 2021, which includes the hours claimed in AGMA's attorneys' initial fees request, as well as 1.3 hours on September 17, 2021 that Mr. Grayson, counsel of record, claims he spent working on the renewed fees request. Defendant filed a response opposing certain time entries submitted by AGMA's attorneys. AGMA filed a reply brief in which AGMA's attorneys requested an additional 9 hours for time spent litigating their EAJA request.

## DISCUSSION

I.    History of EAJA and EAJA Requirements

With regard to paying attorneys' fees and costs, the United States Supreme Court has stated:

> This Court's "'basic point of reference' when considering the award of attorney's fees is the bedrock principle known as the '"American Rule"': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683, 103 S. Ct. 3274, 77 L. Ed. 2d 938 (1983)). The American Rule has "roots in our common law reaching back to at least the 18th century." *Baker Botts*, 576 U.S., [121, 126], 135 S. Ct., at 2164 (citing *Arcambel v. Wiseman*, 3 Dall. 306, 1 L. Ed. 613 (1796)); *see also Summit Valley Industries, Inc. v. Carpenters*, 456 U.S. 717, 721, 102 S. Ct. 2112, 72 L. Ed. 2d 511 (1982) (observing that the American Rule "has been consistently followed for almost 200 years"); *Alyeska Pipeline*,

6

421 U.S. [247,] 257 [(1975)], 95 S. Ct. 1612 (referring to the presumption against shifting attorney's fees as a "general" rule).

Peter v. Nantkwest, Inc., 140 S. Ct. 365, 370–71 (2019) (alteration added); see also Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 602 (2001) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. at 247 ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser."); Nilssen v. Osfam Sylvania, Inc., 528 F.3d 1352, 1357 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2008); Arcambel v. Wiseman, 3 U.S. (Dall.) 306 (1796). "Absent statute or enforceable contract, litigants pay their own attorney's fees." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. at 257 (citations omitted). This has come to be known as the "American Rule," and the only exceptions to this rule are those created by Congress and a small group of common law equitable exceptions which federal courts lack the power to enlarge. See id. at 269. The Supreme Court in Alyeska noted the equitable exceptions of (1) willful disobedience of a court order, (2) bad faith on the part of a losing party, and (3) the common fund or common benefit exception allowing recovery of costs when the prevailing party is a trustee of property or is a party preserving or recovering a fund for the benefit of others in addition to himself. See id. at 257–59. When the House of Representatives considered the Equal Access to Justice Act, it provided the following rationale:

> For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

H.R. Rep. No. 96-1418, at 9, reprinted in 1980 U.S.C.C.A.N. at 4988.

In addition, litigants seeking to recoup litigation expenses from the United States also face the barrier of overcoming sovereign immunity. See Nilssen v. Osfam Sylvania, Inc., 528 F.3d at 1357; see also Chiu v. United States, 948 F.2d 711, 714 (Fed. Cir. 1991); Gavette v. Office of Pers. Mgmt., 808 F.2d 1456, 1460 (Fed. Cir. 1986); Griffin & Dickson v. United States, 21 Cl. Ct. 1, 4 (1990). "[T]he traditional principle that the Government's consent to be sued 'must be "construed strictly in favor of the sovereign . . . ."'" United States v. Nordic Vill., 503 U.S. 30, 34 (1992) (quoting Ruckelshaus v. Sierra Club, 463 U.S. at 685 (quoting McMahon v. United States, 342 U.S. 25, 27 (1951))); see also Ardestani v. I.N.S., 502 U.S. 129, 137 (1991); Crawford v. United States, 157 Fed. Cl. 741, 744 (2022) ("Because the EAJA renders defendant liable for attorneys' fees for which it would not otherwise be responsible, the statute operates as a partial waiver of sovereign immunity. The statute must, therefore, 'be strictly construed in favor of the United States.'") (internal citation omitted).

Only a statutory directive waiving immunity can make the United States potentially liable in suit. See Lane v. Pena, 518 U.S. 187, 192 (1996); United States v. Testan, 424 U.S. 392, 399 (1976); Soriano v. United States, 352 U.S. 270, 276 (1957). Departing from the American rule that generally each party in a litigation pays its own costs, "Congress

enacted EAJA, Pub. L. 96-481, Tit. II, 94 Stat. 2325, in 1980 "'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government.'" Starry Assocs., Inc. v. United States, 892 F.3d 1372, 1377 (Fed. Cir. 2018) (quoting Scarborough v. Principi, 541 U.S. 401, 406 (2004) (quoting H.R. Rep. No. 96-1005, at 9 (1980))); see also Gavette v. Office of Pers. Mgmt., 808 F.2d at 1459 (quoting H.R. Rep. No. 96-1418, at 5 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4984 (1980)) (Congress recognized that the American Rule deterred individuals and small businesses "from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights"); Crawford v. United States, 157 Fed. Cl. at 743–44 ("the EAJA creates an exception to this general rule [American Rule], and under certain circumstances, also allows for recovery of costs"); Yang v. United States, 156 Fed. Cl. 1, 5 (2021) ("EAJA provides a means by which a qualifying party might receive reasonable attorneys' fees and related expenses and costs for prevailing in litigation involving the United States."); 2M Rsch. Servs., LLC v. United States, 148 Fed. Cl. 99, 103 (2020) ("Congress created EAJA for the purpose of placing private litigants and the government on equal footing regarding the costs of litigation."). "The primary purpose of the EAJA is to ensure that litigants 'will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.'" Wagner v. Shinseki, 640 F.3d 1255, 1259 (Fed. Cir. 2011) (quoting Scarborough v. Principi, 541 U.S. at 407) (citations and internal quotation marks omitted in original); see also Ellis v. United States, 711 F.2d 1571, 1576 (Fed. Cir. 1983) ("EAJA's primary purpose is to eliminate legal expense as a barrier to challenges of unreasonable government action.").

As indicated by the United States Court of Appeals for the Federal Circuit, EAJA is a fee-shifting statute that allows a party who prevails in a civil action against the government to recover attorney fees and costs. See Robinson v. O'Rourke, 891 F.3d 976, 980 (Fed. Cir. 2018); Gurley v. Peake, 528 F.3d 1322, 1326 (Fed. Cir. 2008); Davis v. Nicholson, 475 F.3d 1360, 1363 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007). Because EAJA "exposes the government to liability for attorney fees and expenses to which it would not otherwise be subjected, it is a waiver of sovereign immunity." Ed A. Wilson, Inc. v. Gen. Servs. Admin., 126 F.3d 1406, 1408 (Fed. Cir. 1997) (citing Ardestani v. I.N.S., 502 U.S. at 137).

In order to accomplish its purpose, EAJA made two primary changes to the then prevailing law. See Gavette v. Office of Pers. Mgmt., 808 F.2d at 1460 (citing H.R. Rep. No. 96-1418, at 9, 1980 U.S.C.C.A.N. at 4987). First, in 28 U.S.C. § 2412(b), the EAJA extended the existing common law and statutory exceptions to the American Rule to make the United States liable for attorney's fees just as private parties would be liable. See Gavette v. Office of Pers. Mgmt., 808 F.2d at 1460 (citing H.R. Rep. No. 96-1418, at 9, 17, 1980 U.S.C.C.A.N. at 4987, 4996); see also Scarborough v. Principi, 541 U.S. at 406 ("First, § 2412(b) made the United States liable for attorney's fees and expenses 'to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.'"). As reflected in Gavette v. Office of Personnel Management, the House Committee on the Judiciary

stated that:

> Section 2412(b) permits a court in its discretion to award attorney's fees and other expenses to prevailing parties in civil litigation involving the United States to the same extent it may award fees in cases involving other parties . . . . Thus, under this subsection, cases involving the United States would be subject to the "bad faith," "common fund" and "common benefit" exceptions to the American rule against fee-shifting. The United States would also be liable under the same standards which govern awards against other parties under Federal statutory exceptions, unless the statute expressly provides otherwise.

Gavette v. Office of Pers. Mgmt., 808 F.2d at 1460 (citing H.R. Rep. No. 96-1418, at 17, 1980 U.S.C.C.A.N. at 4996); see, e.g., Centex Corp. v. United States, 486 F.3d 1369, 1372 (Fed. Cir. 2007) (stating that section 2412(b) "allows for fee awards when the government acts in bad faith as defined under the common law."); Knight v. United States, 982 F.2d 1573, 1579–82 (Fed. Cir. 1993) (common fund exception); MVM, Inc. v. United States, 47 Fed. Cl. 361, 363–65 (2000) (common benefit); St. Paul Fire & Marine Ins. Co. v. United States, 4 Cl. Ct. 762, 769 (1984) (bad faith exception).

Regarding the eligibility criteria for parties seeking attorneys' fees under EAJA, the Supreme Court has stated that

> eligibility for a fee award in any civil action requires: (1) that the claimant be a "prevailing party"; (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

Comm'r, I.N.S. v. Jean, 496 U.S. 154, 158 (1990) (quotations omitted); see also Scarborough v. Principi, 541 U.S. at 408 (quoting the eligibility criteria contained at Section 2412(d) of the EAJA statute); Smith v. McDonough, 995 F.3d 1338, 1344 (Fed. Cir. 2021) ("In general, the EAJA requires an award of fees, including reasonable attorney fees and expenses, to a prevailing party upon proper application, unless the Government's contrary position was substantially justified, or special circumstances make an award unjust."); Libas, Ltd. v. United States, 314 F.3d 1362, 1365 (Fed. Cir. 2003); Yang v. United States, 156 Fed. Cl. at 5.

Section 2412(b) of the EAJA statute states:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction. The United States shall be liable for such fees and expenses to the same

9

extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b).[4]

The EAJA statute further provides that reasonable fees and expenses shall be awarded to the prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(2)(A). Also, the EAJA statute provides that

"fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.).

Id.

Courts have considerable discretion to determine what level of attorneys' fees are reasonable and the number of hours which should be compensated. See Comm'r, I.N.S. v. Jean, 496 U.S. at 161. The United States Supreme Court provided the prevailing guidance:

There is no precise rule or formula for making these determinations [for fee awards]. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

Hensley v. Eckerhart, 461 U.S. 424, 436–37 (1983) (alteration added); see also Comm'r v. Jean, 496 U.S. at 161 (quoting Hensley v. Eckerhart, 461 U.S. at 437) ("In Hensley, we emphasized that it is appropriate to allow the district court discretion to determine the amount of a fee award, given its 'superior understanding of the litigation and the

---

[4] Prior to EAJA, certain statutes had contained specific waivers of sovereign immunity for the United States. See Gavette v. Office of Pers. Mgmt., 808 F.2d at 1460. Section 2412 of the EAJA statute was enacted to provide a more "uniform rule" which would "make such specific exceptions unnecessary." Gavette v. Office of Pers. Mgmt., 808 F.2d at 1460 (citing 28 U.S.C. § 2412 (Historical and Statutory Notes)).

desirability of avoiding frequent appellate review of what essentially are factual matters.' The EAJA prescribes a similar flexibility."). The United States Court of Appeals for the Federal Circuit has applied the Hensley approach in EAJA cases. See Hubbard v. United States, 480 F.3d 1327, 1332–33 (Fed. Cir. 2007) ("The trial court has considerable discretion in determining reasonable attorney fees."); see also Former Emps. of Motorola Ceramic Prods. v. United States, 336 F.3d 1360, 1364 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); RAMCOR Servs., Grp., Inc. v. United States, 185 F.3d 1286, 1290 (Fed. Cir. 1999) ("The trial judge enjoys considerable discretion to determine eligibility for an EAJA award."); Yang v. United States, 156 Fed. Cl. at 5 ("[t]he court retains discretion to 'reduce the amount to be awarded [pursuant to this subsection, or deny an award,] to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in the controversy." (quoting 28 U.S.C. § 2412(d)(1)(C)) (alteration added); Quimba Software, Inc. v. United States, 140 Fed. Cl. 624, 629 (2018); Info. Scis. Corp. v. United States, 88 Fed. Cl. 626, 633 n.3 (2009) (explaining that Hensley has been applied by the Federal Circuit in EAJA cases). Moreover, the court should not award fees "to the extent that the applicant ultimately fails to prove justification for each item of fee claimed[.]" Fritz v. Principi, 264 F.3d 1372, 1377 n.1 (Fed. Cir. 2001).

**Protestor as the Prevailing Party**

The United States Supreme Court has stated that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. at 433 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278–79 (1st Cir. 1978)); see also Brewer v. Am. Battle Monuments Comm'n, 814 F.2d 1564, 1567–69 (Fed. Cir. 1987). According to the Supreme Court, "the term 'prevailing party' in fee statutes is a 'term of art' that refers to the prevailing litigant." Astrue v. Ratliff, 130 S. Ct. 2521, 2525 (2010); see also Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. at 603. "[T]he 'touchstone of the prevailing party inquiry must be the material alteration of the relationship of the parties.'" CRST Van Expedited, Inc. v. E.E.O.C., 578 U.S. 419, 422 (2016). The Federal Circuit has indicated in an EAJA analysis, "[a] party prevails in a civil action if he receives '"at least some relief on the merits of his claim."'" Robinson v. O'Rourke, 891 F.3d at 980; Davis v. Nicholson, 475 F.3d at 1363 (quoting Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. at 603–04 (quoting Hewitt v. Helms, 482 U.S. 755, 760 (1987))); but see CRST Van Expedited, Inc. v. E.E.O.C., 578 U.S. at 431–32 (holding that "a defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party.'"); Raniere v. Microsoft Corp., 887 F.3d 1298, 1306 (Fed. Cir. 2018) ("The relevant inquiry . . . then, is not limited to whether a defendant prevailed on the merits, but also considers whether the district court's decision—'a judicially sanctioned change in the legal relationship of the parties'—effects or rebuffs a plaintiff's attempt to effect a 'material alteration in the legal relationship between the parties.'") (alteration added).

In their request for EAJA fees, AGMA's attorneys quoted the AGMA I Opinion at

length to "establish AGMA as the prevailing party, and explain why (AGMA believes) the actions under review [by the defendant] were not substantially justified." (alteration added). Defendant does not dispute or respond to AGMA's assertion that it was the prevailing party in <u>AGMA I</u>, 152 Fed. Cl. 125. As indicated above, in <u>AGMA I</u>, this court issued an Opinion, which granted AGMA's motion for judgment on the Administrative Record and enjoined the contract award to Ranger. <u>See id.</u> at 174. This court determined that "[t]aken as a whole, the actions taken by the contracting officer after the corrective action are considered by the court to be arbitrary and capricious." <u>Id.</u> at 170. The court also found that AGMA had been prejudiced by FEMA's actions because the "best value trade-off analysis demonstrates that there was a substantial chance of AGMA receiving the award, but for errors in the procurement process." <u>See id.</u> at 172.

Therefore, because this court determined that FEMA acted without a rational basis when it awarded the contract to Ranger after taking corrective action and the court issued a permanent injunction of the award, AGMA qualifies as a "prevailing party." In the request for attorneys' fees currently before the court, protestor received """at least some relief on the merits of [its] claim."'" <u>Davis v Nicholson</u>, 475 F.3d at 1363 (alteration added) (quoting <u>Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.</u>, 532 U.S. at 603–04 (quoting <u>Hewitt v. Helms</u>, 482 U.S. at 760)); <u>see also</u> <u>Martinez v. United States</u>, 94 Fed. Cl. 176, 181 (2010).

### The Government was not Substantially Justified

"Pursuant to the EAJA, a 'prevailing party' in litigation against the government is entitled to recover reasonable attorney fees and expenses unless the court finds the position of the United States in the underlying litigation was 'substantially justified.'" <u>Padgett v. Shinseki</u>, 643 F.3d 950, 953 (Fed. Cir. 2011) (quoting 28 U.S.C. § 2412(d)(1)(A)). After a protestor's attorney requesting attorneys' fees and costs demonstrates it is the prevailing party, EAJA requires that the government's position viewed over the entire course of the dispute was not substantially justified. <u>See</u> 28 U.S.C. § 2412(d)(1)(B). "The burden of establishing 'that the position of the United States was substantially justified,' § 2412(d)(1)(A) indicates and courts uniformly have recognized, must be shouldered by the Government." <u>Scarborough v. Principi</u>, 541 U.S. at 414 (citing <u>Pierce v. Underwood</u>, 487 U.S. 552, 567 (1988); <u>Davidson v. Veneman</u>, 317 F.3d 503, 506 (5th Cir. 2003); <u>Lauer v. Barnhart</u>, 321 F.3d 762, 764 (8th Cir. 2003)); <u>Libas, Ltd. v. United States</u>, 314 F.3d at 1365); <u>see also</u> <u>Comm'r v. Jean</u>, 496 U.S. at 165. ("The 'substantial justification' requirement of the EAJA establishes a clear threshold for determining a prevailing party's eligibility for fees, one that properly focuses on the governmental misconduct giving rise to the litigation."); <u>White v. Nicholson</u>, 412 F.3d 1314, 1315 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2005), <u>cert. denied</u>, 547 U.S. 1018 (2006); <u>Doty v. United States</u>, 71 F.3d 384, 385 (Fed. Cir. 1995); <u>Cmty. Heating & Plumbing Co. v. Garrett</u>, 2 F.3d 1143, 1145 (Fed. Cir. 1993) ("The burden is on the government to present a substantial justification for its actions."); <u>Gavette v. Office of Pers. Mgmt.</u>, 808 F.2d at 1465–66; <u>Superior Optical Labs, Inc. v. United States</u>, 157 Fed. Cl. 140, 146 (2021) (quoting <u>WHR Grp.</u>, 121 Fed. Cl. 673, 677 (2015)) ("[W]hen 'the Government loses its case on the merits, it bears the burden of showing that its position

was "substantially justified.""").

Just because a trial court finds for a protester and against the government, however, does not mean the government's position was not substantially justified. See Pierce v. Underwood, 487 U.S. at 569 ("[T]he fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."); see also White v. Nicholson, 412 F.3d at 1316–17 (stating that the "substantial justification" standard focuses on "the totality of the circumstances," including, among other things, the "merits, conduct, reasons given, and consistency with judicial precedent"). The United States Supreme Court has indicated that "a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." Pierce v. Underwood, 487 U.S. at 566 n.2; see also Adkins v. United States, 154 Fed. Cl. 290, 300 (2021); Sharp v. United States, 91 Fed. Cl. 798, 802 (2010). The Supreme Court also has stated that the meaning of "substantially justified" is not "'justified to a high degree,' but rather 'justified in substance or in the main' - that is, justified to a degree that could satisfy a reasonable person." See Pierce v. Underwood, 487 U.S. at 565; see also Yang v. United States, 156 Fed. Cl. at 5. Also according to the Supreme Court, to be substantially justified means "more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve." Pierce v. Underwood, 487 U.S. at 565–66 (footnote omitted).

The United States Court of Appeals for the Federal Circuit in Gavette v. Office of Personnel Management elaborated that "substantial justification is to be decided case-by-case on the basis of the record," and has held "'substantial justification' requires that the Government show that it was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts." Gavette v. Office of Pers. Mgmt., 808 F.2d at 1467 (emphasis in original); see also Blakley v. United States, 593 F.3d 1337, 1341 (Fed. Cir. 2010) ("In the context of EAJA claims, we have held that the 'position of the United States' in judicial proceedings refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.'") (quoting Doty v. United States, 71 F.3d at 386). The trial court is instructed to "look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." Chiu v. United States, 948 F.2d at 715 (footnote omitted). Substantial justification encompasses agency action, matters before the GAO, and protester's litigation in this court. See Doty v. United States, 71 F.3d at 386.

Based on the course of conduct by the agency during the procurement at issue, as elaborated in the AGMA I Opinion, see generally AGMA I, 152 Fed. Cl. 125, which is incorporated into this EAJA Opinion, the court finds that the actions by the agency during the procurement process were not substantially justified, and, therefore, for the purposes of considering the EAJA fees request submitted by the protester's attorneys, the second

prong of the EAJA statute is satisfied. Moreover, the defendant has not argued that its position during this litigation was substantially justified. See 28 U.S.C. § 2412(d)(1)(a).

**Special Circumstances**

The third EAJA requirement for a court to consider before attorneys' fees should be awarded is whether any special circumstances exist that would make an award of fees to the protestor unjust. See 28 U.S.C. § 2412(d)(1)(A); see also 2M Rsch. Servs., LLC v. United States, 148 Fed. Cl. at 104 (citing Meyer Grp., Ltd. v. United States, 129 Fed. Cl. 579, 588 (2016) (quoting S. Rep. No. 96-253, at 7 (1979))). "Defendant bears the burden of establishing the existence of such special circumstances." Sabo v. United States, 127 Fed. Cl. 606, 633 (2016), aff'd, 717 F. App'x 986 (Fed. Cir. 2017). The EAJA statute does not explain what constitutes a special circumstance that would preclude the grant of attorneys' fees and expenses, but the United States Court of Appeals for the Federal Circuit has indicated:

> This "safety valve" helps to insure [sic] that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

L.G. Lefler, Inc. v. United States, 801 F.2d 387, 389 (Fed. Cir. 1986) (alteration added); see also Air Transp. Ass'n of Canada v. FAA, 156 F.3d 1329, 1333 (D.C. Cir. 1998) ("With the scant guidance of the sparse legislative language and the snippet of history, courts, have generally held that the statutory language expresses a congressional directive for courts 'to apply traditional equitable principles' in determining whether a prevailing party should receive a fee award under EAJA."). "Courts look to equitable principles such as the doctrine of 'unclean hands' in determining whether there are special circumstances that would make an EAJA award unjust." Greenhill v. United States, 96 Fed. Cl. 771, 778 (2011). For example, "EAJA awards have been found to be unjust when a plaintiff purposefully takes advantage of government misconduct and subsequently challenges the same misconduct." Id. A Judge of the United States Court of Federal Claims in Greenhill stated when addressing the special circumstances prong of the EAJA award standard that:

> Improper conduct by an attorney may result in denial of EAJA fees when the attorney's conduct creates the need for the litigation for which he is seeking payment. *Webb v. Astrue,* 525 F. Supp. 2d 1329, 1334 (N.D. Ga. 2007) (denying attorneys' fees because plaintiff's counsel failed to raise an issue before an administrative law judge that ultimately resulted in litigation for which the attorney sought fees); *Wimpy v. Barnhart,* 350 F. Supp. 2d 1031, 1036 (N.D. Ga. 2004) (denying attorney's fees when plaintiff's attorney successfully obtained a remand to consider an expert opinion, but attorney's own negligence in failing to timely disclose expert's opinion

14

resulted in the remand). In other words, an attorney cannot receive fees when the case was only in court due to the attorney's own improper conduct.

Greenhill v. United States, 96 Fed. Cl. at 778.

In the protest before the court, AGMA's attorneys argue that there are no extraordinary or special circumstances in AGMA Security Service, Inc. v. United States, Case No. 20-926C, that would justify not awarding attorneys' fees to the attorneys. Defendant, however, argues as to the request for fees related to the appeal, brought by Ranger, that:

> In this instance, because the United States did not appeal the Court's judgment, "special circumstances" exist that would make award of appellate fees unjust. See 28 U.S.C. § 2412(d)(1)(A). The Court should exclude the 31.8 hours spent on the appeal, in which the United States was not a party, for a total of $6,974.06.

Defendant did not raise the special circumstances as a defense to the fees requested by AGMA's attorneys other than the fees incurred during the appeal process. As indicated above, the defendant bears the burden of establishing the existence of special circumstances that would preclude the award of attorneys' fees to AGMA. The sum total of defendant's argument for special circumstances are the two sentences cited immediately above. Regarding the protestor's attorneys' request for attorneys' fees for work on the appeal, the record demonstrates that Ranger appealed this court's judgment in AGMA Security Service, Inc. v. United States, Case No. 20-926C, to the United States Court of Appeals for the Federal Circuit. Ultimately, the Federal Circuit dismissed the appeal "[u]pon consideration of Ranger American of Puerto Rico, Inc.'s unopposed motion to voluntarily dismiss this appeal pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure[.]" AGMA Sec. Serv., Inc. v. United States, No. 2021-1716, 2021 WL 4059806, at *1 (Fed. Cir. Sept. 1, 2021).

The court, however, does not find defendant's argument persuasive for several reasons. First, defendant asserts that it was not a party to Ranger's appeal to the Federal Circuit, but the docket for the appeal indicates that the United States Department of Justice did file an entry of appearance in the Federal Circuit on June 8, 2021 on behalf of the United States. In addition, the United States submitted two motions for extensions of time on June 8, 2021 and June 11, 2021 "within which to file a response to the Court's invitation to respond to two motions to dismiss." Defendant also submitted a filing titled: "Bresponse [sic] to the Court's Order to Respond to the Two Motions to Dismiss" on June 23, 2021, in which defendant argued that Ranger's "appeal is moot because there is no meaningful relief the court can order under the specific circumstances of the case," and that the "proper remedy is to remand with instructions to vacate the injunction and dismiss the complaint." Further, defendant, having entered a noncompliant notice of entry on June 8, 2021 as intervenor in the Federal Circuit appeal, filed a corrected entry of appearance on June 11, 2021. Defendant's argument that it was not a participant in the Ranger appeal is without merit because, upon appeal, the defendant was listed as "defendant" and

submitted a substantive brief.[5] Defendant's brief argument in this court, without much explanation or analysis,[6] that a "special circumstance" exists under EAJA regarding protestor's attorneys' fee request for work on the appeal that would render the award of attorneys' fees "unjust" is rejected by the court. Defendant's and AGMA's attorneys continued to protect their clients' interests and were obligated to respond to court orders once they entered notice of appearance during the appeal. The court has carefully reviewed AGMA's attorneys' performance for "special circumstances," which could bar recovery and has found nothing which rises to the level of behavior which should bar recovery of appropriately claimed attorneys' fees due to special circumstances. Based on a review of the record, given that no special circumstances existed that would make the award of EAJA fees unjust, the court proceeds to review the details of AGMA's attorneys' renewed EAJA fees request for $39,774.44 in attorneys' fees and $400.00 in costs.

**Filing Requirement**

The fourth EAJA requirement to receive attorneys' fees under EAJA is that the fees request must be submitted within thirty days of final judgment and supported by an itemized statement. See 28 U.S.C. § 2412(d)(1)(B); see also Scarborough v. Principi, 541 U.S. at 407–08; Impresa Construzioni Geom. Domenico Garufi v. United States, 531 F.3d 1367, 1369 (Fed. Cir. 2008). Defendant argues generally that "AGMA has failed to demonstrate that any of the fees or expenses that it seeks were 'incurred' by it, as required by EAJA." (Citing 28 U.S.C. § 2412(d)(1)(A)). Defendant states:

> Although AGMA's lawyers provide itemized billable hours statements and a certification that AGMA's net worth is less than $2 million, 28 U.S.C. § 2412(d)(2)(B), Exch. 2, it fails to provide any representation agreements, invoices/bills that AGMA's attorneys have sent to it, or any evidence that AGMA has any obligation to pay the attorneys should it be awarded any EAJA fees.

> In *Phillips*, the Federal Circuit held that fees were not "incurred" within the meaning of EAJA simply because they were incurred on behalf of the prevailing party. 924 F.2d at 1583. Rather, the Federal Circuit held that "to be 'incurred' within the meaning of a fee shifting statute, there must also be an express or implied agreement that the fee award will be paid over to the legal representative." *Id.*

> AGMA has not demonstrated that it is obligated to turn over any EAJA

[5] At the appeal in the Federal Circuit, Case No. 2021-1716, AGMA was listed as "Plaintiff-Appellee" and Ranger was listed as "Defendant-Appellant."

[6] Defendant, quoting Ardestani v. I.N.S., also asserts that "EAJA is only a partial waiver of sovereign immunity and any such waiver 'must be strictly construed in favor of the United States,'" but does not develop that assertion with respect to AGMA's attorneys' request for fees. See Ardestani v. I.N.S., 502 U.S. 129, 137 (1991).

award to its counsel (or that it has already paid the fees and expenses claimed). AGMA has not provided any representation agreement(s) with its attorneys, nor did it provide any other evidence of the terms of any agreement with its counsel. Accordingly, the Court may not award AGMA any fees and expenses.

AGMA's attorneys respond:

Incurred. As to whether these fees were "incurred," as a threshold matter, it probably is within the Court's ability to take judicial notice of the fact that, *pro bono* work aside, attorneys do not work for free. This is not a fact that is "subject to reasonable dispute." Fed. R. Evid. 201.

Second, the EAJA application states, under oath, that Mr. Grayson's hourly rate for this work was $750, and Mr. Fuertes's was $200. EAJA App. at 13. There is no evidence in the record to the contrary.

Third, EAJA is quite specific about how to establish when fees are incurred and whether they are reasonable, *i.e.*, "an itemized statement from any attorney [or expert witness] representing or appearing in [sic] behalf of the party stating the actual time expended and the rate at which fees are other expenses were computed." The Defendant does not dispute that AGMA has complied with this requirement. If Congress had wanted to add a requirement that retainer agreements or payment records be added, it would have done so. It is one of the basic canons of statutory interpretation that "[n]othing is to be added to the text." A. Scalia and B Garner, Reading Law: The Interpretation of Legal Texts 93 (2012).

Fourth, controlling precedent is quite clear that an EAJA award for attorney's fees is based on the services "actually rendered," not the services retained, billed or paid. *Phillips v. Gen. Servs. Admin.*, 924 F.3d 1577, 1583 (Fed. Cir. 1991), citing *Cornella v. Schweiker*, 728 F.2d 978, 985–87 (8th Cir. 1984).

(emphasis in original; footnote omitted; first alteration added). AGMA's attorneys also disagree with defendant's reading of Phillips, arguing that the case "actually did grant EAJA attorney's fees, in the full amount permitted by EAJA, for all the attorney hours actually spent, notwithstanding the fact that that was a contingent-fee case" (citing Phillips v. Gen. Servs. Admin., 924 F.2d at 1582) (emphasis in AGMA's brief).

Mr. Grayson was the attorney of record and Mr. Fuertes was local counsel in the AGMA bid protest, Case No. 20-926C. There is no indication in the record that Mr. Grayson or Mr. Fuertes worked on the AGMA protest as pro bono counsel. Admittedly, the request for attorneys' fees is not as detailed as it could have been, but as discussed below, the details describing work performed are sufficient in the court's view to receive awards of attorneys' fees for some, but not all, of the fee requests submitted. The

statements by AGMA's counsel throughout the litigation and about the hourly rates of the attorneys and work performed sufficiently suggests that counsel charged AGMA for their services. AGMA's counsel deserves payment for much of the work submitted for payment and defendant has not offered support for its allegations. Mr. Grayson, counsel of record in <u>AGMA Security Service, Inc. v. United States</u>, Case No. 20-926C, in particular, was active and visible throughout AGMA's bid protest case by signing the complaint, submitting briefs, attending conferences, and presenting argument on behalf of AGMA. As for Mr. Fuertes, Mr. Grayson indicated during case proceedings that Mr. Fuertes was working with him on the protest. Moreover, the fees requested were timely submitted within thirty days of final judgment and both counsel included an itemization of their fee requests and the costs they claimed. The court finds that AGMA has met the basic filing requirements. The details of the validity of the specific itemized attorneys' fee requests are discussed below.

**Eligibility Requirements**

The EAJA statute also requires a party to meet certain eligibility requirements to qualify for EAJA compensation. The client for which the attorneys request EAJA fees must be an owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000.00 at the time the civil action was filed and must not have had more than 500 employees at the time the civil action was filed. <u>See</u> 28 U.S.C. § 2412(d)(2)(B)(ii). Alternatively, a party can be "an individual whose net worth did not exceed $2,000,000.00 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B)(i). Thus, "'[t]o qualify as a prevailing party, [protestor] must satisfy the eligibility requirements of both net worth and number of employees.'" <u>Al Ghanim Combined Grp. v. United States</u>, 67 Fed. Cl. 494, 498 (2005) (alteration added) (quoting <u>Lion Raisins, Inc. v. United States</u>, 57 Fed. Cl. 505, 511 (2003)); <u>see</u> <u>also</u> <u>Missouri Pac. Truck Lines, Inc. v. United States</u>, 746 F.2d 796, 797–98 (Fed. Cir. 1984); <u>Fields v. United States</u>, 29 Fed. Cl. 376, 382 (1993), <u>aff'd</u>, 64 F.3d 676 (Fed. Cir. 1995).

In this case, AGMA's Chief Executive Officer, Edgardo Toro, submitted a declaration with AGMA's attorneys' request for attorneys' fees that, on behalf of himself and Mr. Fuertes, which indicated that AGMA was "a corporation with a net worth that did not exceed $7,000,000.00 when Case No. 20-926C was filed. AGMA had fewer than 500 employees at the time that civil action was filed." Protestor's attorneys also submitted with their request for attorneys' fees a statement from Antonio F. Secola, a certified public accountant, in which Mr. Secola declared that, on the date that Case No. 20-926C was filed, July 29, 2020, protestor's net worth was under $4,100,000.00[7] and had fewer than 500 employees. Moreover, defendant has not contested that AGMA meets these EAJA eligibility requirements. The court concludes, therefore, that AGMA has met the EAJA

---

[7] Defendant errs when it indicates that to recover fees under EAJA, "the plaintiff, an individual, had a net worth that did not exceed $2 million," and then states that "AGMA's lawyers provided itemized billable hours statements and a certification that AGMA's net worth is less than $2 million, 28 U.S.C. § 2412(d)(2)(B)."

eligibility requirements to be eligible to be reimbursed for appropriate attorneys' fees.

**Specific Dollar Requests Submitted by the Attorneys**

As indicated above, after this court issued AGMA I, 152 Fed. Cl. 125, AGMA's attorneys submitted an initial EAJA fees request, which this court dismissed as premature due to the pending Ranger appeal in the United States Court of Appeals for the Federal Circuit. Following Ranger's unsuccessful and completed appeal, discussed in greater detail below, AGMA's attorneys timely filed a renewed fees EAJA request, which includes the hours claimed in the initial fees request as well as an additional 1.3 hours for time spent updating the initial EAJA fees request. In their renewed EAJA fees request, AGMA's attorneys request $37,800.65 in attorneys' fees and for a $400.00 filing fee. In addition, AGMA's attorneys submitted a reply brief in which they request an additional $1973.79 in attorneys' fees for time spent litigating the EAJA fee requests. In total, AGMA's attorneys request $39,774.44 in attorneys' fees and $400.00 in costs for a total of 40,174.44. AGMA's attorneys' renewed request for EAJA fees states:

> Subject to the statutory cap, the "guiding light" of fee-shifting jurisprudence is "the product of reasonable hours times a reasonable rate." *Starry Associates, Inc. v. United States*, 892 F.3d 1372, 1382, 62 CCF ¶ 81,418 (Fed. Cir. 2018). Mr. Grayson's actual hours are set forth in the Appendix below, and Mr. Fuertes' actual hours are set forth in Ex. B. As noted in *Starry, id.*, the Court can adjust these hours *upward*, in the fee award:
>
>> A prevailing party can recover an increased fee award through an increase in the reasonable number of hours, not just through a corresponding increase in the reasonable fee rate.
>
> *Id.* Such an upward adjustment from actual hours, is hence, within the Court's discretion. The Court may also, subject to the statutory cap, "enhance" the hourly rate. *Id.*
>
> The Complaint also requests costs, which the Court expressly can award under 28 U.S.C. § 2412, *inter alia*. AGMA respectfully requests award of such costs, *i.e.*, the court filing fee of $400, as supported below.
>
> This request, if calculated with the fee cap adjusted for inflation, and with no upward adjustment of hours or rates, totals $38,200.65, as follows.

(emphasis in original). AGMA's attorneys both request a cost adjustment for billable attorneys' fees for inflation, stating:

> The recovery of attorney's fees under 28 U.S.C. § 2412(d) is subject to the adjustable $125 an hour cap under 28 U.S.C. § 2412(d)(2)(A). AGMA requests the increase for cost of living, which raises the attorney's fee

ceiling to $219.31 based on the CPI-U [Consumer Price Index for All Urban Consumers] for the Northeast, *i.e.*, $125.00 x 285.63 / 162.8. Mr. Fuertes' hourly rate, at $200 per hour, is below this inflation-adjusted cap. Mr. Grayson's hourly rate, at $750 per hour, is above it.

(alteration added).

The summary for the request for fees by the AGMA attorneys in their EAJA fees request is as follows:

| Attorney or Item | Hours/Quantity | Capped Rate/Cost | TOTAL |
|---|---|---|---|
| Alan Grayson | 138.5 | $219.31 | $30,374.43 |
| Alberto Fuertes | 47.0 | $200.00 | $9,400.00 |
| Filing Fee | 1 | $400.00 | $400.00 |

In addition, Mr. Grayson submitted a reply brief in support of his EAJA fees request, in which he claims an additional 9 hours of work for time he spent litigating the EAJA fees request at the capped rate of $219.31 for a total of $1,973.79. In total, Mr. Grayson claims 138.5 hours in the renewed EAJA fees request and in his reply brief, and Mr. Fuertes claims 47.0 hours of time. Both attorneys together request a total of 185.5 hours.

While not objecting to the rates to be applied, the defendant objects to some of AGMA's attorneys' specific fee requests on the following grounds: (1) the local counsel's records are generally insufficiently detailed, (2) records before drafting the complaint should be excluded, (3) records for the supplemental brief should be excluded,[8] (4) the time AGMA spent on briefing the opposition to the defendant's successful motion to dismiss the premature EAJA application should be excluded, (5) because the United States did not appeal the court's judgment in AGMA Security Service, Inc. v. United States, Case No. 20-926C, the court should exclude $6,974.06 in fees for Mr. Grayson related to Ranger's appeal to the Court of Appeals for the Federal Circuit.

1.    **Cost of Living Adjustment**

"The EAJA allows recovery of attorneys' fees and expenses, subject to certain limitations, including a cap on the hourly rate for fees. A statutory $125 per hour cap applies to attorneys' fees claims," WHR Grp., Inc. v. United States, 121 Fed. Cl. at 679, "unless the court determines that an increase in the cost of living or a special factor such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii); see also Q Integrated Co. v. United States, 133

---

[8] Defendant uses the term "supplemental brief" to describe documents that Mr. Grayson attempted to include in the Administrative Record for AGMA I,152 Fed. Cl. 125. These included "various documents from unrelated bid protests at the Government Accountability Office (GAO)," on different solicitations from the one at issue in AGMA I, which Mr. Grayson stated he had worked to obtain "under the GAO's version of the Freedom of Information Act.""

Fed. Cl. 479, 493 (2017); Infiniti Info. Solutions, LLC v. United States, 94 Fed. Cl. 740, 751 (2010); Cal. Marine Cleaning v. United States, 43 Fed. Cl. 724, 733 (1999) ("Cost of living adjustments are specifically contemplated in the EAJA."). It is within the court's discretion to apply a cost of living adjustment (COLA). See Dallas Irrigation Dist. v. United States, 91 Fed. Cl. 689, 705 (2010). As explained by a Judge of this court:

> A COLA is generally permitted "as a reflection of the increase in the cost of living from the effective date of the statutory cap to the date legal services were rendered." *See Cal. Marine Cleaning*, 43 Fed. Cl. at 733. Although a COLA is awarded at the Court's discretion, "justification for such award is self-evident if the applicant alleges that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ('CPI')," *id.*, so long as the applicant "suppl[ies] the Court with relevant CPI data." *Infiniti Info. Sols., LLC v. United States*, 94 Fed. Cl. 740, 751 (2010). Where a plaintiff successfully shows an increase in the cost of living, this Court has regularly held that a COLA "should be freely granted." *WHR Grp., Inc. v. United States*, 121 Fed. Cl. 673, 679 (2015) (citing *United Partition Sys. v. United States*, 95 Fed. Cl. 42, 58 (2010)).

2M Rsch. Servs., LLC v. United States, 148 Fed. Cl. at 108.

In order to calculate the appropriate COLA, the Judge in 2M Research Services, LLC v. United States explained that "[c]ourts have routinely calculated a COLA by multiplying EAJA's $125 hourly cap by the applicable CPI [consumer price index] and then dividing that product by $155.7 which is the CPI for March 1996, when the cap was raised from $75 to $125." Id. (alteration added) (citing Cal. Marine Cleaning v. United States, 43 Fed. Cl. at 733–34 and Contract with America Advancement Act of 1996, Pub. L. No. 104-121 § 232(b)(1), 110 Stat. 847, 863); see also Q Integrated Co. v. United States, 133 Fed. Cl. at 493. To determine which CPI multiplier should apply, the Judge in 2M Research Services explained:

> In determining which CPI is applicable to a given award, the Federal Circuit has endorsed the use of "a single mid-point inflation adjustment factor applicable to services performed before and after that mid-point." *Lion Raisins*, 57 Fed. Cl. at 519 (citing to *Chiu v. United States*, 948 F.2d 711, 722 n. 10 (Fed. Cir. 1991)); *see also WHR Grp*, 121 Fed. Cl. at 679. "Under the 'mid-point' method, the Court determines the 'month that lies at the mid-point between the first and last month for which attorneys' fees are being awarded,' and uses the CPI for that 'mid-point' month as the basis for the cost of living adjustment to the statutory cap." *WHR Grp.*, 121 Fed. Cl. at 679 (citing *DGR Assocs., Inc. v. United States*, 97 Fed. Cl. 214, 221 (2011), *rev'd on other grounds*, 690 F.3d 1335 (Fed. Cir. 2012)). The formula for calculating a COLA adjustment is as follows:

$125 x Relevant CPI Month

21

$155.7 (March 1996 CPI)

*See Lion Raisins*, 57 Fed. Cl. at 520 n.19 (utilizing the above formula to establish attorneys' fees).

2M Rsch. Servs., LLC v. United States, 148 Fed. Cl. at 108.

Relying on the Department of Labor's Bureau of Labor Statistics Data and the Consumer Price Index (CPI), the AGMA attorneys' fees submission states "AGMA requests the increase for the cost of living, which raises the attorney's fee ceiling to $219.31 based on the CPI-U for the Northeast, *i.e.*, $125.00 x 285.63 / 162.8." AGMA's attorney of record, Mr. Grayson, however, does not provide justification as to why the rate for the Northeast is appropriate for him. Mr. Grayson is listed on his submissions to this court as located in Windemere, Florida, which, according to the Bureau of Labor Statistics, is located in the Southeast Region.

As noted above, the appropriate CPI multiplier to use is the mid-point of the services provided. See id. Mr. Grayson does not indicate the months or the timeframe that he used to determine the applicable CPI month. Mr. Grayson's first entry of time is listed as May 19, 2020. As discussed below, however, Mr. Grayson's first compensable fee request under EAJA, is on June 23, 2020. Mr. Grayson's last compensable entry of time submitted was on September 17, 2021. There were 451 days between June 23, 2020 and September 17, 2021. The mid-point, or 225.5 days after June 23, 2020 is February 3, 2021. Accordingly, the court uses the CPI from February 2021 to calculate the COLA adjustment for Mr. Grayson's rate per hour. The CPI calculation should be $125 (statutory cap) x 253.39 (CPI for the Southeast region for February 2021) / 155.7 (March 1996 CPI) = $203.43 per hour. For Mr. Grayson's hours, the court finds a reasonable rate of compensation for Mr. Grayson is $203.43.

Mr. Fuertes, local counsel for AGMA, states in his declaration that he is located in Hato Ray, in the municipality of San Juan, Puerto Rico. Mr. Fuertes states:

My standard hourly rate for legal work is $200 per hour. This is consistent with the market rate for experienced business lawyers in the San Juan metropolitan area.

Regarding what constitutes a "reasonable rate," the only relevant information of which I am aware is a survey of attorneys conducted by the Economic Research Institute. It indicates that the average salary (not billing rate) for lawyers in Puerto Rico is $57 per hour. In my experience, as a rule of thumb, billing rates are approximately four times salaries. The equivalent billing rate would be $228 per hour.

The court applies the same base formula for calculating an appropriate COLA adjustment for Mr. Fuertes. Mr. Fuertes' first compensable time entry is on July 2, 2020 and his last

compensable time entry is on December 29, 2020. There were 180 days between July 2, 2020 and December 29, 2020. The mid-point, or 90 days after July 2, 2020 and 90 days before December 29, 2020 is September 30, 2020. Accordingly, the court uses the CPI from September 2020 to calculate the COLA adjustment for Mr. Fuertes' rate per hour. According to the Bureau of Labor Statistics, Puerto Rico falls within the "Northeast Region," which means that the rate to be used in calculating the COLA for Mr. Fuertes is the Northeast rate for September 2020, or $273.93. The calculations, therefore, are $125 (statutory cap) x 273.93 (CPI for the Northeast for October 2020) / 155.7 (March 1996 CPI) = $219.92. Mr. Fuertes has stated in his declaration that his rate is $200.00 an hour, which is below the COLA adjusted fees allowed by EAJA. As such, for the reasonable hours claimed by Mr. Fuertes, he is entitled to his regular rate of $200.00 an hour.

### 2. Billable Time

To determine which hours can be eligible and compensated as billable in response to an EAJA request, a Judge of this court explained:

> In quantifying reasonable attorney's fees, the Court must first start with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hubbard*, 480 F.3d at 1332 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). The Court may then either increase or decrease this amount "based on a number of factors, of which 'the most critical factor is the degree of success obtained.'" *Id.* at 1332 (citing *Hensley,* 461 U.S. at 436, 103 S. Ct. 1933). Where the plaintiff has prevailed, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley,* 461 U.S. at 435, 103 S. Ct. 1933; *see also Jean,* 496 U.S. at 163 n.10, 110 S. Ct. 2316 (*Hensley* standard of reasonableness of fees applies to EAJA); *Sabo v. United States*, 127 Fed. Cl. 606, 634 (2016), *aff'd*, 717 F. App'x 986 (Fed. Cir. 2017); *Baldi Bros. Constructors v. United States*, 52 Fed. Cl. 78, 82 (2002). Also, under the EAJA, the plaintiff's attorney's fees award may be reduced if the plaintiff "unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412 (d)(1)(C).

Quimba Software, Inc. v. United States, 140 Fed. Cl. at 629–30.

As discussed above, the government generally asserts that "the Court should reduce the amount AGMA requests by $17,033.91, because the entries are not sufficiently detailed." The United States Supreme Court has stated that "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." Hensley v. Eckerhart, 461 U.S. at 437 n.12. "To be sure, 'the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" Rumsey v. Dep't of Justice, 866 F.3d 1375, 1379 (Fed. Cir. 2017) (quoting Hensley v. Eckerhart, 461 U.S. at 437). "The applicant should exercise 'billing judgment' with respect to hours worked, and should

maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Hensley v. Eckerhart, 461 U.S. at 437 (internal citation and footnote omitted). In Rumsey v. Department of Justice the Court of Appeals for the Federal Circuit explained:

> Submission of invoices and billing records is how fee applicants routinely satisfy this burden of showing reasonable hours expended. *See, e.g., Webb v. Bd. of Educ.*, 471 U.S. 234, 238 n.6, 105 S. Ct. 1923, 85 L. Ed. 2d 233 (1985) ("Contemporaneously recorded time sheets are the preferred practice" over "a reconstruction of the hours . . . counsel spent on the matter."). And, "[c]ourts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (quoting *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)).

Rumsey v. Dep't of Justice, 866 F.3d at 1379 (omission in original).

With regard to the fees application currently before the court, defendant argues, as to some of Mr. Grayson's fee requests,

> although the EAJA application was filed under seal, Mr. Grayson's records refer to the discussions with "[redacted]," and it is impossible to assess with *whom* Mr. Grayson was having discussion. Without more information, the Government cannot assess whether the time was related to filing the complaint in this Court.

| Date | Hours Claimed | Description |
|---|---|---|
| 5/19/2020 | 0.3 | Discussed stop-work order & corrective action w/ [redacted]. |
| 5/20/2020 | 0.4 | Discussed corrective action response. |
| 6/23/2020 | 0.4 | Rec'd T/C; discussed CFC judicial review w/ [redacted]. |
| 6/27/2020 | 0.6 | Discussed debriefing & protest options. |
| 7/3/2020 | 0.3 | Advised [redacted] re legal options. |
| 7/8/2020 | 0.2 | Discussed related decision with [redacted]. |

(capitalization and brackets in original). Although some of Mr. Grayson's recorded time entries do not provide great detail, Mr. Grayson's time log submitted with his request for

attorneys' fees gives the court sufficient information to make a determination as to which claimed entries are awardable, and which claimed entries should be denied. See Hensley v Eckerhart, 461 U.S. at 437 n.12; Rumsey v. Dep't of Justice, 866 F.3d at 1379. The fee claims before June 15, 2020, the date of the contract award to Ranger in the above captioned case, however, are not awardable because they were incurred prior to any work performed on the complaint and case filed in AGMA Security Service, Inc. v. United States, Case No. 20-926C.

The government also asserts that the insufficient detail in the "time records submitted for local counsel, Alberto Fuertes, is not excusable given that he made limited appearances, including at the first status conference." The government states:

> AGMA provides no basis upon which to attribute thousands of dollars in drafting briefs and legal research to Mr. Fuertes, with little, to no detail provided. Importantly, Mr. Fuertes also does not record communication with Mr. Grayson, who would have presumably directed him to perform legal research. Also some of Mr. Fuertes's time records communicating with Mr. Grayson do not correlate or match to Mr. Grayson's time records.

(internal citations omitted). Defendant's broad assertion of no communication between Mr. Fuertes and Mr. Grayson is not supported by the record in the attorneys' request for fee reimbursement in the above captioned protest. There are entries in the time logs which reference communications between the two attorneys. The government's assertion that "Mr. Grayson did not even copy Mr. Fuertes on correspondence among the attorneys, such as correspondence about redactions, the administrative record, supplementing briefing, etc.," that Mr. Fuertes' recorded hours do not correspond with Mr. Grayson's records, and that the entries from Mr. Grayson between August 26, 2020 and September 1, 2020 "do not include any correspondence with Mr. Fuertes about the briefs or research," again are contradicted by the time logs. For example, Mr. Fuertes' claim for attorneys' fees states:

| 8/26/2020 | Receive, read, and analyze Reply in Support for Judgment; factual and legal research re: Reply. | 3.00 | $600.00 |
|---|---|---|---|
| 8/31/2020 | Receive, read, and analyze Defendant Reply in Support of Judgment; factual and legal research Re: Defendant Reply. | 4.00 | $800.00 |
| 9/1/2020 | Receive, read, and analyze Defendant Reply in Support of Its Cross Motion for Judgment; continued research. | 3.00 | $600.00 |

(capitalization in original).

The government further argues that the 5.5 hours that Mr. Fuertes recorded on December 29, 2020 should be reduced to one hour. Mr. Fuertes reported that during

those 5.5 hours, he was

> receiving, reviewing, analyzing, and explaining the sealed opinion to AGMA.
> In contrast, Mr. Grayson records *one* hour for reviewing the sealed opinion
> *and* discussing it with Mr. Fuertes. Indeed, the CM/EMF notification shows
> that the order was not distributed until 6:16 PM EST; thus, although Mr.
> Fuertes was not a CM/ECF recipient (he had to rely on Mr. Grayson
> distributing filings), he purports to have spent that entire evening on
> reviewing the sealed opinion.

(emphasis in original; internal citations omitted). The government argues that the entry
from December 29, 2020 should be reduced to one hour, "which was the amount of time
Mr. Grayson spent reviewing and communicating that opinion." The government also
argues that the court should exclude certain hours submitted for Mr. Fuertes' time logs
because he claims hours during which he states that he spoke to Mr. Grayson, but Mr.
Grayson's log does not contain a corresponding entry. By way of example, defendant
observes that "on June 26, 2020, Mr. Fuertes records three hours for a 'Telephone
Meeting with Mr. Edgardo Toro (president of AGMA) and attorney Alan Grayson re: FEMA
debriefing,' at a cost of $600, but Mr. Grayson does not have a corresponding entry."
According to Mr. Fuertes' time log for attorney's fees:

| 8/11/2020 | Telephone Call with attorney Alan Grayson, Plaintiff. Received, Read and Analyzed Motion For Preliminary and Permanent Injunction; research Re: Motion. | 5.00 | $1,000.00 |
|---|---|---|---|

(capitalization in original).

In addition, the government argues that this court should remove the ten hours that
Mr. Fuertes attributed "to reviewing briefs and legal research, despite AGMA's briefing
being completed by that point." In total, the government argues that the court should
reduce Mr. Fuertes' EAJA fees request from 47 hours ($9,400.00), by 19.5 hours
($3,900.00), to 27.5 hours for a total of $5,500.00.[9]

Mr. Grayson responds that the government's objections to certain of Mr. Fuertes'
time reports "misapprehends the actual role of Mr. Fuertes in this case, and the
relationship between his work and Mr. Grayson's work." Mr. Grayson argues that Mr.
Fuertes acted as a "bridge" between the court, Mr. Grayson, and "AGMA's owner (and its
directors)" who "expected detailed status reports and 'Q & A' regarding this case." Mr.
Grayson continues: "It was Mr. Fuertes's regular practice to review the filings in the case

---

[9] Defendant made a computational error in its response to AGMA's attorneys' request for
fees and expenses under EAJA and calculated that 19.5 hours of work at Mr. Fuertes'
hourly rate is equal to $4,100.00 when it is actually $3,900.00 (19.5 hours x $200.00 =
$3,900.00).

after they were filed – sometimes, a number of days after they were filed, depending on the press of other work – in order to perform this 'bridge' function properly." As described by Mr. Grayson to the court, Mr. Fuertes was acting as local counsel, a liaison, and interpreter for a Spanish speaking client. Therefore, AGMA's attorneys argue, "there is no 'one-to-one correspondence' between the timing of Mr. Grayson's work and the timing of Mr. Fuertes' work; the Defendant's manufacturing of supposed 'inconsistencies' is not well-taken." The court also agrees that "[a]bsent some specific showing of abuse, the Court will not second-guess counsel's decision to use attorneys or paralegals for work which counsel reasonably deemed suitable for such professionals." First Fed. Savings and Loan Ass'n of Rochester v. United States, 88 Fed. Cl. 572, 588 (2009). Mr. Grayson, also states:

> The Defendant also attacks the time records of Mr. Fuertes, arguing that they do not track with certain filings and arguments in the case. This misapprehends the actual role of Mr. Fuertes in this case, and the relationship between his work and Mr. Grayson's work. AGMA's owner does not speak English; he speaks Spanish. Mr. Fuertes is very fluent in both English and Spanish. Therefore, whenever information was needed from AGMA relating to the case, Mr. Fuertes had to obtain it.

Indeed, attorneys have an ethical obligation to communicate with their clients. The court finds hours spent by Mr. Fuertes communicating with the client are compensable.

The court, however, finds that when Mr. Fuertes recorded that he was communicating with Mr. Grayson on a call or at a meeting, when Mr. Grayson's logs do not have corresponding meeting entries, Mr. Fuertes' entries should not be allowable. For example, with regard to Mr. Fuertes' claimed time entry on August 11, 2020, which lists a "Telephone call with attorney Alan Grayson, Plaintiff. Received, read, and analyzed motion for preliminary and permanent injunction; research re: motion," the court denies recovery for 30 minutes for the claimed telephone call with Mr. Grayson because there is no corresponding entry in Mr. Grayson's log. The court rejects Mr. Fuertes' entries in which he claims he was communicating with Mr. Grayson, but Mr. Grayson's log does not include a corresponding time entry, for a total of 8 hours for a value of $1,600.00. The following time entries below for Mr. Fuertes are denied.

| Date | Time Claimed | Description |
|------|--------------|-------------|
| 6/26/2020 | 3.0 | Telephone Meeting with Mr. Edgardo Toro (president of AGMA) and attorney Alan Grayson re: FEMA debriefing |
| 7/8/2020 | 1.0 | Telephone meeting w/ Attorney Alan Grayson re: COFC Complaint; follow up |
| 7/23/2020 | 2.5 | Telephone meeting and work with Alan Grayson and Plaintiff re: Bid protest pre-filing notice and related documents |

| 8/11/2020 | 0.5 | Telephone call with attorney Alan Grayson, Plaintiff. Received, read, and analyzed motion for preliminary and permanent injunction; research re: motion |
|-----------|-----|----------------------------------------------------------------------------------------------------------------------------------------------------------|
| 9/14/2020 | 1.0 | Telephone meeting with attorney Alan Grayson and plaintiff re: Plaintiff's supplemental brief |
| **Total** | **8** | |

(capitalization in original).

Regarding defendant's arguments about the time during which Mr. Fuertes reported that he was explaining or discussing matters with the client, the court finds that it is reasonable for Mr. Fuertes to bill for the time to explain various legal matters to the client, particularly, as Mr. Grayson pointed out that Mr. Fuertes was acting as local counsel, a liaison, and interpreter for the Spanish speaking client. Regarding the hours that Mr. Fuertes recorded for conducting research that defendant states are not reasonable because there was no recorded time for coordinating with Mr. Grayson, the absence of a corresponding entry does not establish that Mr. Fuertes was not conducting that legal research or drafting documents. Mr. Grayson indicated during the proceedings that research to assist Mr. Grayson was part of Mr. Fuertes' role in the case. Moreover, there is evidence of discourse and exchange of documents between Mr. Grayson and Mr. Fuertes to support the attorneys' request for work claimed by Mr. Grayson and Mr. Fuertes in the protest. In sum, the court denies 8 of Mr. Fuertes' claimed hours, which brings Mr. Fuertes' total reimbursable hours to 39 hours, yielding a fee of $7,800.00 as reimbursement for Mr. Fuertes.

AGMA's attorneys also have made a claim for work regarding the GAO proceedings and fee reimbursement requests for work done before the complaint in Case No. 20-926C was filed. Defendant argues that records of work done before drafting and filing the complaint in this case should be excluded. The United States Court of Appeals for the Federal Circuit has held that "'the Equal Access to Justice Act applies to civil actions in federal courts, and does not encompass administrative agency actions.'" Levernier Constr., Inc. v. United States, 947 F.2d 497, 501 (Fed. Cir. 1991) (quoting Blair v. United States, 10 Cl. Ct. 614, 616 (1986)). Also, the Federal Circuit has indicated that "the trial court, in its discretion, may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried." Oliveira v. United States, 827 F.2d 735, 744 (Fed. Cir. 1987) (footnote omitted); see also Superior Optical Labs. Inc. v. United States, 157 Fed. Cl. at 150 (quoting Cal. Marine Cleaning, Inc. v. United States, 43 Fed. Cl. at 731–32); United Partition Sys., Inc. v. United States, 95 Fed. Cl. 42, 56 (2010); Lion Raisins, Inc. v. United States, 57 Fed. Cl. at 517; Cal. Marine Cleaning, Inc. v. United States, 43 Fed. Cl. at 731–32 ("The GAO is a separate tribunal and protests filed in that forum are not "civil actions" within the ambit of EAJA. Attorney fees and expenses incurred in litigation before the GAO thus may not

be recovered under the EAJA."). Therefore, fees incurred during Ranger's protest of the contract previously awarded to AGMA before the GAO or before an executive branch agency are not recoverable as EAJA fees in this case, <u>AGMA Security Service, Inc. v. United States</u>, Case No. 20-926C.

The award to Ranger by the agency, which AGMA protested, was made on June 15, 2020. The complaint in the above captioned protest in this court, Case No. 20-926C, for which counsel seeks fee reimbursement, was filed on July 29, 2020. The defendant argues that

> [i]mmediately after FEMA initially awarded the contract to AGMA, Ranger protested that award to GAO. *AGMA*, 152 Fed. Cl. at 141 [Ranger American of Puerto Rico, Inc., B-418598.1 (Apr. 15, 2020)]. FEMA then took corrective action and made a new award decision, awarding to Ranger instead of AGMA. *Id.* at 141–42, 146. During the pendency of the GAO protest and new award evaluation, FEMA had issued a stop-work order to AGMA in May 2020. *Id.* On June 15, 2020, FEMA terminated for convenience the previously-awarded AGMA contract, on the same day it made award to Ranger. *Id.* at 146.

> As shown below, both Mr. Grayson and Mr. Fuertes include records in the EAJA application that pertain to the stop work order and FEMA's proposed corrective action before the new award decision was made. Mr. Grayson's records do not refer to drafting the pre-filing notice and complaint until July 22, 2020, but Mr. Fuertes bills time allegedly attributable to the complaint on and *before* July 8, 2020. Also, on June 26, 2020, Mr. Fuertes records three hours for a "Telephone Meeting with Mr. Edgardo Toro (president of AGMA) and attorney Alan Grayson re: FEMA debriefing," at a cost of $600, but Mr. Grayson does not have a corresponding entry.

(emphasis in original). Defendant includes the following excerpt from Mr. Fuertes' request for attorney's fees:

| Date | Time Claimed | Description |
|---|---|---|
| 6/26/2020 | 3.00 | Telephone Meeting with Mr. Edgardo Toro (president of AGMA) and attorney Alan Grayson re: FEMA debriefing |
| 7/2/2020 | 0.25 | Received and read email for attorney Alan Grayson Re: Court of Federal Claims Complaint |
| 7/3/2020 | 3.50 | Telephone Meeting with AGMA directors (Sr. Edgardo Toro and Hector Agosto) Re: Court of Federal Claims Complaint |
| 7/3/2020 | 1.50 | Received and read email/Complaint from attorney Alan Grayson Re: Court of Federal Claims Complaint |
| 7/8/2020 | 1.00 | Telephone Meeting with attorney Alan Grayson Re: Court of Federal Claims Complaint; follow-up. |
| 7/8/2020 | 0.25 | Received and read email Mr. Edgardo Toro Re: Court of |

| | | Federal Claims Complaint |
|---|---|---|

(capitalization in original).

For that same period of time, Mr. Grayson recorded the following attorney's fees:

| Date | Time Claimed | Description |
|---|---|---|
| 5/19/2020 | 0.3 | Discussed stop-work order & corrective action w/ [redacted]. |
| 5/20/2020 | 0.4 | Discussed corrective action response. |
| 6/23/2020 | 0.4 | Rec'd T/C; discussed CFC judicial review w/ [redacted]. |
| 6/27/2020 | 0.6 | Discussed debriefing & protest options |
| 7/3/2020 | 0.3 | Advised [redacted] re legal options |
| 7/8/2020 | 0.2 | Discussed related decision w/ [redacted]. |

(capitalization and brackets in original). AGMA's attorneys, citing Levernier Construction, Inc. v. United States, argue that precedent from the United States Court of Appeals for the Federal Circuit establishes that "at its earliest, EAJA coverage may begin after the decision of and in pursuit of an appeal from the decision of a contracting officer." Levernier Constr., Inc. v. United States, 947 F.2d at 500. AGMA's attorneys continue that "[a]ll of the attorney work in question falls on the right side of the line drawn in Levernier."

As discussed above, fees incurred for the earlier Ranger protest before the GAO or proceedings in the executive branch agency are not recoverable as EAJA fees in this court. Mr. Grayson claims to have worked on the above captioned protest, AGMA Security Service, Inc. v. United States, Case No. 20-026C, before June 15, 2020, the date on which the contracting officer made the award to Ranger in Case No. 20-926C, and the agency was still conducting corrective action in response to the earlier Ranger protest at the GAO. See generally Ranger American of Puerto Rico, Inc., B-418598.1.

Mr. Grayson recorded that on May 19, 2020 and May 20, 2020 respectively, he "[d]iscussed stop-work order & corrective action w/ [redacted]," and "[d]iscussed corrective action response." (brackets in original). According to his time log, Mr. Grayson performed work on the corrective action and work at the GAO, which predates the protest in this court, AGMA Security Service, Inc. v. United States, Case No. 20-926C. Moreover, while "corrective action response" may have included discussions about a possible action in this court, any such discussions or work performed would have been entirely speculative prior to June 15, 2020 when the contract was awarded to Ranger and a possible claim in AGMA Security Service, Inc. v. United States, Case No. 20-926C, became real. Therefore, there was no justification in this case for the fees hours of work that Mr. Grayson claims before June 15, 2020 because those hours were not for working on AGMA Security Service, Inc. v. United States, Case No. 20-926C. Contrary to Mr. Grayson's argument regarding the Levernier case, Mr. Grayson's hours prior to June 15, 2020 were, indeed, not "on the right side of the line drawn in Levernier." Mr. Grayson's claim for 0.3 hours on May 19, 2020 and 0.4 hours on May 20, 2020, for a total of 0.7

hours for $142.40, are denied.

Regarding the time spent trying to include records from unrelated GAO proceedings in the Administrative Record for the above captioned case, Case No. 20-926, Mr. Grayson claims that the work that he performed trying to obtain, and include, the records from separate, unrelated GAO proceedings initiated by Ranger American of the Virgin Islands, Inc. into the Administrative Record in the AGMA Security Service, Inc. v. United States, Case No. 20-926C, should be compensable as EAJA fees. In his brief to include the documents, Mr. Grayson argues that

> briefs filed a few months ago [before the AGMA I, 152 Fed. Cl. 125 Opinion was issued] in GAO protest No. B-418539, a procurement protest initiated by Ranger American of the Virgin Islands. Inc. ("Ranger-VI"), sister company of Defendant-Intervenor Ranger American of Puerto Rico, Inc. ("Ranger-PR"). Ranger-VI was represented by the same counsel as Ranger-PR here. The fundamental reason why AGMA is proffering the lodged material is that both Ranger and defendant agency the Federal Emergency Management Agency ("FEMA") made statements in those briefs, shortly before the award decision protested here, that are fundamentally at odds with that award decision, as well as statements that they have made to the court here.

(alteration added). Additionally, Mr. Grayson indicates

> [a]fter the Defendant refused to incorporate them [the GAO records] in the record, AGMA obtained them under the GAO's version of the Freedom of Information Act, and proffered them to the Court. The Court's decision did not rely upon these records, and the Court has never formally ruled on AGMA's motion. Although the Defendant would like to make it seem as though it prevailed on this issue, the Court never ruled. In any event, for EAJA purposes, *it simply doesn't matter* what the Court's ruling *would have been*, because that AGMA motion clearly was part of these "proceedings," and therefore covered by EAJA. 28 U.S.C. § 2414(d).

(alteration added; emphasis in original). Although AGMA's attorney argues that the hours devoted to inserting the GAO records into the Administrative Record for the case before this court, AGMA Security Service, Inc. v. United States, Case No. 20-926C, should be compensable under EAJA. Defendant does not agree. According to defendant,

> [t]he administrative record was filed on August 5, 2020, and after briefing was completed, oral argument was held on September 11, 2020. However, more than two months *after* the oral argument, on November 23, 2020, AGMA filed a motion to supplement the administrative record with various documents from unrelated bid protests at the Government Accountability Office (GAO).

These GAO records (briefing by unrelated parties at the GAO), were never incorporated into any briefing by the parties, but were purportedly submitted in support of AGMA's unsuccessful Stafford Act, 42, U.S.C. § 5150(a)(1), argument. Indeed, the Court never ruled on AGMA's motion to supplement the administrative record. Also, in rejecting AGMA's interpretation of the Stafford Act, the Court did not refer to the documents in the opinion; rather, the Court only cited the publicly available opinion, *Falken USVI, LLC*, B-416581.2, 2019 WL 157737, that the parties had briefed. *AGMA*, 152 Fed. Cl. at 152–55.

(alteration added; internal citations omitted; emphasis in original).

As acknowledged by both parties, the court did not consider or rely on these unrelated GAO documents that AGMA's attorneys tried to include in the Administrative Record in the above captioned protest when the court concluded that protestor's Stafford Act claim did not have merit. Because these GAO documents were from an unrelated to the case for which AGMA's attorneys seek fees reimbursement, were not included in the Administrative Record and were not relied on by the court in making its decision, the court denies the following fee requests:

| Date | Time Claimed | Description |
|------|------|------|
| 8/16/2020 | 0.5 | Drafted and field expedited records request to GAO |
| 8/21/2020 | 0.7 | Rec'd order denying substitution of counsel; began reviewing Gov't and Ranger briefs; FOIA follow-up |
| 8/28/2020 | 0.1 | Follow-up FOIA Request |
| 9/14/2020 | 1.3 | Prepared and filed supplemental brief |
| 11/15/2020 | 0.2 | Note to BH[10] re accessing GAO FOIA records |
| 11/16/2020 | 1.2 | Reviewed GAO record in Falken-Ranger protest |
| 11/22/2020 | 2.7 | Drafted request for leave to file GAO materials |
| 11/23/2020 | 0.9 | Filed request for leave to file GAO materials; order and notes re same; circulated redactions |
| 11/26/2020 | 0.4 | Finalized and filed redacted motion for leave to file documents |
| 12/6/2020 | 0.8 | Reviewed Opps. [Opposition] To supplementation; follow-up |

---

[10] The use of the initials "BH" is not explained.

| | | re: Ranger documents |
|---|---|---|
| 12/8/2020 | 4.4 | Researched and filed leave reply. |
| **Total** | **13.2** | |

(alteration added; capitalization in original). The court, therefore, disallows 13.2 hours of Mr. Grayson's claimed fee request for time for the hours spent on his attempt to include unrelated GAO documents into the Administrative Record in AGMA Security Service, Inc. v. United States, Case No. 20-926C.

**Appeal to the United States Court of Appeals for the Federal Circuit**

AGMA's attorneys also assert that they are entitled to attorneys' fees for work on the appeal in the United States Court of Appeals to the Federal Circuit, which was filed by Ranger, the intervenor in Case No. 20-926C. As described above, defendant argues the fees incurred for work on the appeal are not compensable under EAJA in this protest. Defendant further argues that this claim for work on the appeal was a special circumstance and the claim for attorneys' fees claimed by the AGMA attorneys for the work on the appeal should be denied. As discussed above, the court does not agree with defendant and has concluded that the time spent working on the appeal is compensable under EAJA.

As noted above, although Mr. Grayson's records are not overly detailed, they are sufficient for the court to review. As stated by a Judge of this court,

> the court agrees that some of the entries in the billing records are somewhat cryptic or short on details. In at least some instances, however, the lack of detail is cured by cross-checking the time sheets for the various attorneys who worked on this case and by reviewing docket entries to determine what specific filings were being made at particular times . . . .

> In particular, the court finds that, given the overall level of detail, the fact that some of the entries cited by defendant do not list subjects is not disqualifying. See KMS Fusion, 39 Fed. Cl. at 600 ("As a practical matter, certain tasks performed by attorneys are not amenable to issue-based recordkeeping. For example, for an attorney to attempt to break down the time spent drafting a complaint on an issue-by-issue basis would not be productive."). In the court's view, this conclusion is consistent not only with the Supreme Court's instructions in Hensley and the prior jurisprudence in this circuit, but also with the overarching mandate that the fees awarded here be "reasonable."

Applegate v. United States, 52 Fed. Cl. 751, 769–70 (2002), aff'd, 70 F. App'x 582 (Fed. Cir. 2003), cert. denied, 540 U.S. 1149 (2004). Mr. Grayson's entries provide sufficient,

albeit not extensive, detail, or always connections to prepared documents, but the time expended is supported and does not appear to be a "specific showing of abuse." See id. at 585.

In total, for work performed on the merits of the AGMA Security Service, Inc. v. United States, Case No. 20-926C, the court allows the following hours for Mr. Grayson's fee requests:

| Date | Hours Claimed | Description |
|---|---|---|
| 6/23/2020 | 0.4 | Rec'd T/C; discussed CFC judicial review w/ [redacted]. |
| 6/27/2020 | 0.6 | Discussed debriefing & protest options. |
| 7/3/2020 | 0.3 | Advised [redacted] re legal options. |
| 7/8/2020 | 0.2 | Discussed related decision with [redacted]. |
| 7/22/2020 | 1.3 | Prepared and served pre-filing notice. |
| 7/23/2020 | 3.2 | Drafted Complaint statement of facts. |
| 7/24/2020 | 2.8 | Finished drafting complaint; discussed same w/ AF & Ranger att'y. |
| 7/25/2020 | 0.3 | Discussed status w/ AF |
| 7/27/2020 | 6.3 | Researched & revised Complaint re Stafford Act issue; discussed matters w/ Gov't att'y, AF & Ranger att'y. |
| 7/28/2020 | 1.9 | Follow-up re Ranger public records; began drafting injunction motion. |
| 7/29/2020 | 5.4 | Finished and filed all initial submissions. |
| 7/30/3030 | 0.6 | Rec'd initial court orders; follow-up re same & hearing. |
| 7/31/2020 | 3.4 | Filed exhibits; prepared for & participated in scheduling conf.; discussed same & AR w/ co-counsel. |
| 8/2/2020 | 0.9 | Exchanged notes w/ DOJ re administrative record. |
| 8/3/2020 | 1.6 | Discussed AR w/ opposing counsel. |
| 8/5/2020 | 0.3 | Exchanged notes re AR. |
| 8/6/2020 | 0.7 | Protective order applications. |
| 8/7/2020 | 0.4 | Follow-up re protective order and redactions. |

| 8/8/2020 | 0.8 | Follow-up re Fuertes admission to protective order; prepared redactions for MSJ. |
| 8/11/2020 | 1.6 | Filed redacted motion for preliminary injunction; reviewed administrative record. |
| 8/12/2020 | 8.3 | Drafted MJAR; discussed same with AF. |
| 8/13/2020 | 3.3 | Finalized & filed MJAR. |
| 8/15/2020 | 0.4 | Sent file to AF; note re CPARS; reviewed AGMA-FEMA corresp. |
| 8/17/2020 | 0.2 | Rec'd filings re substitution of counsel. |
| 8/25/2020 | 5.3 | Began drafting MJAR reply. |
| 8/26/2020 | 8.9 | Finished drafting & filed MJAR reply. |
| 8/30/2020 | 0.1 | Exchanged notes re extension on Gov't brief. |
| 8/31/2020 | 0.3 | Reviewed Ranger reply brief. |
| 9/1/2020 | 1.8 | Added redactions to Ranger initial brief; circulated same. |
| 9/8/2020 | 0.8 | Prepared add'l redactions of Ranger reply brief; exchanged notes w/ Gov't counsel. |
| 9/9/2020 | 0.2 | Exchanged notes re supposed AGMA size protest. |
| 9/11/2020 | 3.9 | Prepared for arg.; arg.; post-mortem w/ local counsel; exchanged notes re SBA proceedings. |
| 10/8/2020 | 0.1 | Status report to AF. |
| 10/25/2020 | 0.1 | Forwarded redacted briefs to AF. |
| 10/30/2020 | 0.1 | Status report to AF. |
| 12/29/2020 | 1.0 | PROTEST SUSTAINED; discussed same & follow up w/ AF. |
| 1/4/2021 | 0.6 | Began preparing proposed decision redactions; notes to Gov't att'y re reversing T/C & redaction. |
| 1/14/2021 | 1.1 | Reviewed proposed redactions; responded to same. |
| 1/16/2021 | 0.2 | Provided redacted decision to client. |
| 3/10/2021 | 0.1 | Exchanged notes re redactions. |
| 3/11/2021 | 0.1 | Reviewed Gov't proposed filing re redactions. |
| 3/12/2021 | 0.7 | Research on mootness. |

| | | |
|---|---|---|
| 3/16/2021 | 0.1 | Reviewed corrected notice of appearance for Ranger. |
| 3/19/2021 | 0.1 | Reviewed court order re redactions. |
| 3/21/2021 | 4.3 | Researched & drafted motion to dismiss Ranger appeal. |
| 3/22/2021 | 0.3 | Dismissed motion w/ filing service; exchanged notes re same. |
| 3/23/2021 | 1.3 | Exchanged notes re motion to dismiss & Gov't participation; finalized motion to dismiss. |
| 3/28/2021 | 1.4 | Prepared & filed notice of appearance & certificate of interest. |
| 4/4/2021 | 0.2 | Reviewed briefing schedule changes. |
| 4/9/2021 | 0.3 | Began reviewing opp. to dismissal of appeal. |
| 4/10/2021 | 3.6 | Began drafting reply in support of dismissal. |
| 4/11/2021 | 4.4 | Finished drafting dismissal reply brief. |
| 4/12/2021 | 1.8 | Revised dismissal reply brief. |
| 4/14/2021 | 2.9 | Drafted 2nd motion to dismiss on standing/jurisdiction. |
| 4/22/2021 | 0.3 | Rec'd & reviewed opp. to 2d dismissal motion. |
| 4/24/2021 | 4.0 | Drafted 2d dismissal reply. |
| 4/27/2021 | 0.4 | Exchanged notes w/ filing service re filing 2d dismissal reply. |
| 5/19/2021 | 0.4 | Rec'd & circulated appeal briefing order. |
| 6/4/2021 | 0.2 | Correspondence re extension on Gov't brief. |
| 6/7/2021 | 0.2 | Exchanged notes re Gov't appeal filings. |
| 6/11/2021 | 0.2 | Correspondence re second Gov't extension. |
| 6/15/2021 | 0.1 | Rec'd order extending briefing schedule. |
| 6/25/2021 | 0.1 | Status report to AF. |
| 6/26/2021 | 3.4 | Drafted response to Gov't brief on mootness. |
| 6/29/2021 | 0.4 | Reviewed Ranger response to DOJ brief. |
| 8/2/2021 | 0.2 | Rec'd and reviewed briefing order; note to AF re status. |
| 8/27/2021 | 0.5 | Exchanged notes re dismissal of appeal. |

| | | |
|---|---|---|
| 9/1/2021 | 0.2 | Appeal dismissed. |
| **Total** | **101.9** | |

(capitalization and brackets in original). The court also allows the following hours for Mr. Fuertes' fee requests:

| Date | Hours Claimed | Description |
|---|---|---|
| 7/2/2020 | 0.25 | Received and read email for attorney Alan Grayson Re: Court of Federal Claims Complaint |
| 7/3/2020 | 3.50 | Telephone Meeting with AGMA directors (Sr. Edgardo Toro and Hector Agosto) Re: Court of Federal Claims Complaint |
| 7/3/2020 | 1.50 | Received and read email/Complaint from attorney Alan Grayson Re: Court of Federal Claims Complaint |
| 7/8/2020 | 0.25 | Received and read email Mr. Edgardo Toro Re: Court of Federal Claims Complaint |
| 7/24/2020 | 3.50 | Telephone Meeting and Work with Attorney Alan Grayson and Plaintiff Re: Complaint; reviewed same. |
| 7/24/2020 | 1.50 | Received, read and emails from/to Mr. Edgardo Toro and AGMA directors. Telephone call with AGMA Re: Complaint |
| 7/29/2020 | 1.00 | Received and read email from Attorney Alan Grayson and AGMA Directors Re: Complaint against Ranger; follow-up. |
| 7/30/2020 | 0.25 | Received and read email from attorney Alan Grayson Re: Preliminary Hearing |
| 7/31/2020 | 2.50 | Prepare and Attendance in Preliminary Hearing |
| 8/6/2020 | 0.50 | Prepare Application for Access to Information under Protective Order; reviewed Order. |
| 8/11/2020 | 4.50 | Telephone Calls with attorney Alan Grayson, Plaintiff. Received, Read and Analyzed Motion For Preliminary and Permanent Injunction; research Re: Motion. |
| 8/21/2020 | 0.25 | Receive, read and analyze Court Order RE: Substitution of Counsel |
| 8/26/2020 | 3.00 | Receive, read, and analyze Reply in Support For Judgment; factual and legal research Re: Reply. |
| 8/31/2020 | 4.00 | Receive, read, analyze Defendant Reply in Support of Judgment; factual and legal research Re: Defendant Reply. |

| 9/1/2020 | 3.00 | Receive, read, and analyze Defendant Reply in Support of Its Cross Motion for Judgment; continued research. |
|---|---|---|
| 9/9/2020 | 0.50 | Received, Read and Explained to Plaintiff email regarding Defendant position Re: SBA |
| 9/11/2020 | 2.25 | Telephone Meeting with attorney Alan Grayson and Plaintiff Re: Oral Argument Hearing; reviewed briefs. |
| 8/10/2020[11] | 0.25 | Received and Read Email from attorney Alan Grayson Re: Status of Case |
| 11/23/2020 | 1.00 | Received Read and Analyze Email from attorney Alan Grayson Re: effect of Ranger's original protest |
| 12/29/2020 | 5.50 | Received, Read, and Analyze Sealed Opinion of United States Court of Federals Claims and explained Judgment to Plaintiff. |
| **Total** | **39** | |

(capitalization in original).

### EAJA Fees for Work on EAJA Fee Claim

Mr. Grayson also requests fees for the time spent preparing the initial and renewed EAJA fee requests, as well as time spent litigating the requests. As noted above, AGMA's attorneys claim time related to preparing the initial EAJA fee request, and which this court dismissed as premature due to the pending Ranger appeal in the United States Court of Appeals for the Federal Circuit. Following Ranger's unsuccessful and completed appeal, AGMA's attorneys timely submitted a renewed fee request, which includes the hours claimed in the initial EAJA fee request as well as the hours Mr. Grayson claims he spent working on the appeal. Mr. Grayson also claims an additional 1.3 hours to prepare the "renewed fee petition" for attorneys' fees and costs for a total of $38,200.65. Thereafter, Mr. Grayson filed a reply brief on November 8, 2021 in which he claims that he worked an additional 9 hours litigating the initial and renewed EAJA fee requests. Defendant does not dispute the specific time entries Mr. Grayson spent while completing the EAJA fees application. Rather, defendant argues that

the Court should exclude the time Mr. Grayson spent *litigating* the initial EAJA application, which the Court held to be premature. For example, the Government filed a motion to dismiss, without prejudice, the premature EAJA application on February 24, 2021. After the issue was raised at a status conference, and despite Ranger having already filed its notice of appeal, AGMA declined to withdraw the application and insisted on

---

[11] The time log as submitted by AGMA's attorneys is out of chronological order.

opposing the Government's motion. However, the court granted the Government's motion to dismiss the EAJA application on March 14, 2021.

(internal citations omitted; emphasis in original). Both the United States Supreme Court and the United States Court of Appeals for the Federal Circuit have indicated that a court may make an award for legal fees for the work performed on an EAJA claim. The Supreme Court in Scarborough v. Principi, 541 U.S. 401, noted that

> a party who prevails in fee litigation under EAJA may recover fees for legal services rendered during the fee litigation even if some of the Government's positions regarding the proper fee were "substantially justified," i.e., the district court need not make a second finding of no substantial justification before awarding fees for the fee contest itself.

Id. at 419 n.6 (citing Comm'r v. Jean, 496 U.S. at 160–62); see also Wagner v. Shinseki, 640 F.3d at 1259. Similarly, in Fritz v. Principi, 264 F.3d 1372, regarding the calculation of fees for work on the EAJA claim, the Federal Circuit has indicated that, for work on the case at issue, a protestor is "entitled to attorney fees incurred throughout the litigation, including those incurred in preparation and defense of the fee application to the extent those fees are defensible." Id. at 1377 (footnote omitted); see also Info. Scis. Corp. v. United States, 88 Fed. Cl. at 635 (a claimant is "entitled to fees incurred in preparation and defense of the fee application"). Moreover, to review all fee requests in one review is far more efficient and avoids a second EAJA litigation. As stated by the United States Court of Appeals for the Federal Circuit, "[t]o deny a litigant all supplemental fees simply because the defense of his original fee application was not wholly successful unjustifiably dilutes the value of the original EAJA fee award and is contrary to the fundamental objectives of the EAJA." Wagner v. Shinseki, 640 F.3d at 1260. In Prowest Diversified, Inc. v. United States, 40 Fed. Cl. 879 (1998), the court found that "[a]ttorney fees incurred in assembling an EAJA application, however, are reimbursable to plaintiff only on a pro rata basis. Id. at 889; see also Skip Kirchdorfer, Inc. v. United States, 16 Cl. Ct. 27, 34 (1988) ("a successful applicant is entitled to a pro rata share of the attorneys' fees and expenses incurred in preparation of its EAJA application"). This adjustment prevents the award of fees that went toward preparing the EAJA claim for those portions of the claim that were not successful. The Federal Circuit, in Wagner v. Shinseki, approved this same approach, noting that, "[b]ecause Hensley requires a court to calibrate the amount of attorney fees to the degree of success a claimant has achieved, it is generally appropriate to make an award of supplemental fees that is commensurate with the degree of success obtained on the original fee application." Wagner v. Shinseki, 640 F.3d at 1260.

Regarding the EAJA fees requests before the court, this court finds that the time that Mr. Grayson claims he spent preparing the initial fee application is reimbursable because the initial fee preparation and the initial fee request were incorporated into the AGMA attorneys' renewed fee request. The court also finds that the additional 9 hours that Mr. Grayson claims he spent litigating the renewed EAJA request also is reimbursable., consistent with the concept that the prevailing party "under EAJA may recover fees for legal services rendered during the fee litigation." Scarborough v. Principi,

541 U.S. at 419 n.6. Although the initial fee request was filed before the case on appeal was concluded, the work was not duplicative. The hours that Mr. Grayson claims that he performed for his initial fee request became part of his cumulative, renewed request. In addition, the 9 hours that Mr. Grayson spent litigating the renewed EAJA fees request are not duplicative of the time he spent putting together the first two requests. The court, therefore, approves the following hours claimed by Mr. Grayson for work on the EAJA fee requests:

| Date | Hours Claimed | Description |
|---|---|---|
| 1/20/2021 | 0.7 | Reviewed rules re att'y fee petition; note to AF re same; began reviewing AR. |
| 1/26/2021 | 0.5 | Discussed fee petition w/ AF; received spreadsheet re same. |
| 1/27/2021 | 5.4 | Researched, drafted, & filed fee application & AGMA/Fuertes decls. |
| 1/28/2021 | 0.5 | Provided information re CPA declaration; exchanged notes re redactions |
| 1/29/2021 | 0.8 | Prepared fee app. redactions; filed EAJA supplement. |
| 1/31/2021 | 0.2 | Began reviewing record for redactions. |
| 2/25/2021 | 0.5 | EAJA research. |
| 3/3/2021 | 3.0 | Researched & drafted opp. [opposition] to EAJA delay. |
| 3/9/2021 | 0.6 | Reviewed Gov't EAJA reply; joined in Ranger redaction request. |
| 3/14/2021 | 0.2 | Reviewed att'y fee ruling. |
| 9/17/2021 | 1.3 | Prepared renewed fee petition. |
| 10/13/2021 | 0.2 | EAJA extension notes w/ Gov't. |
| 10/21/2021 | 0.6 | Reviewed Gov't EAJA brief; note to local counsel re reply |
| 11/6/2021 | 0.3 | Discussed EAJA opp. [opposition] w/ AF. |
| 11/7/2021 | 6.0 | Researched & drafted EAJA reply. |
| 11/8/2021 | 1.9 | Exch'd notes w/ AF; rec'd AF decl.; revised, finalized & filed reply |
| **Total** | **22.7** | |

(alteration added; capitalization in original).

Applying the pro rata approach taken in the cases cited above to the current EAJA

requests, the claim for EAJA application fees will be reduced by the same percentage as the overall award of EAJA attorneys' fees was reduced. The court finds that Mr. Grayson claims a total of 138.5 hours, of which 115.8 were spent on the merits of <u>AGMA Security Service, Inc. v. United States</u>, Case No. 20-926C, and 22.7 hours preparing and litigating the EAJA fee requests. Mr. Fuertes claims a total of 47 hours, all spent on the merits. The court denied 13.9 hours of Mr. Grayson's claimed time and denied 8 hours of Mr. Fuertes' claimed time, for a total of 21.9 hour. Mr. Grayson's and Mr. Fuertes' combined time claimed for the merits of <u>AGMA Security Service, Inc. v. United States</u>, Case No. 20-926C was 162.8 hours. The 21.9 hours represent 13.45% of the total hours claimed for the merits.

The court allows 22.7 hours for the time claimed by Mr. Grayson for the preparation of the initial EAJA fees request, the renewed EAJA fees request, and the additional 9 hours that Mr. Grayson requested in his reply brief. The court reduces the 22.7 hours that Mr. Grayson claims for preparing and litigating his EAJA fee requests on a pro rata basis by 13.45% to 19.65 hours. Because Mr. Grayson prepared the fee requests, he is entitled to the adjusted rate of $203.43 an hour for those 19.65 hours, for a total of $3,997.40.

**Bill of Costs – Other Fees and Expenses**

RCFC 54(d)(1) provides, in part, that "[c]osts-other than attorney's fees-should be allowed to the prevailing party to the extent permitted by EAJA, 28 U.S.C. § 2412(a)(1)." RCFC 54(d)(1). EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A); <u>see also</u> <u>Oliveira v. United States</u>, 827 F.2d at 741. The prevailing party has the obligation to provide documentation of the costs it requests. <u>See</u> <u>Asphalt Supply & Serv., Inc. v. United States</u>, 75 Fed. Cl. 598, 602 (2007) (citing <u>Pan Am. Grain Mfg. Co. v. Puerto Rico Ports. Auth.</u>, 193 F.R.D. 26, 35 (D.P.R. 2000), <u>aff'd</u>, 295 F.3d 108 (1st Cir. 2002)). AGMA's attorneys request reimbursement for the filing fee, submitted to the court to process the complaint and subsequent litigation in Case No. 20-926C. Defendant does not raise any objection to the request for the filing fee.

To tax a requested cost, the judge, or the clerk as the court's designee, must find that it is a necessary litigation expense and that the amount to be taxed is reasonable. <u>See</u> <u>Salem Fin., Inc. v. United States</u>, 134 Fed. Cl. 544, 547 (2017) (citing <u>Soler v. Waite</u>, 989 F.2d 251, 255 (7th Cir.), <u>reh'g</u> <u>denied</u> (7th Cir. 1993); <u>Otay Mesa Prop., L.P. v. United States</u>, 127 Fed. Cl. 146, 149 (2016) (citing <u>Soler v. Waite</u>, 989 F.2d at 255); <u>Standard</u>

Commc'ns, Inc. v. United States, 106 Fed. Cl. 165, 175 (2012) (citing Soler v. Waite, 989 F.2d at 255). A Judge of this court has noted that "[u]nder the Equal Access to Justice Act ('EAJA'), 28 U.S.C. § 2412, the Federal Circuit has rejected the claim that parties could not recoup expenses for photocopying, printing and binding of briefs, telephone, postal, and overnight delivery services." Hopi Tribe v. United States, 55 Fed. Cl. 81, 100 (2002) (citing Oliveira v. United States, 827 F.2d at 743–44 (citing Int'l Woodworkers of Am. v. Donovan, 792 F.2d 762, 767 (9th Cir. 1985))) (footnote omitted); see also United Partition Sys., Inc. v. United States, 95 Fed. Cl. 42, 63 (2010) (finding "that the photocopying expenses and court reporter fees at issue are reasonable, were incurred in preparation for, and in conjunction with, the litigation in this court, and would 'customarily be charged to the client.'") (quoting Oliveira v. United States, 827 Fed. Cl. at 744). A Judge of this court in Hopi Tribe v. United States also indicated that "[u]nder the EAJA, this court has awarded administrative expenses and costs such as the 'recovery of copying, delivery services, travel, research services, telephone, and postage costs, as well as other expenses routinely incurred by attorneys, assuming they are documented and reasonably necessary to prosecution of the claim.'" Hopi Tribe v. United States, 55 Fed. Cl. at 100 (quoting R.C. Constr. Co., v. United States, 42 Fed. Cl. 57, 63–64 (1998)). AGMA's attorneys request $400.00 as a filing fee. The court finds the filing fee is a reasonable cost and is allowable as a necessary part of this litigation. Consequently, the court awards AGMA's attorneys the claimed costs of $400.00.

## CONCLUSION

Mr. Grayson claims 138.5 total hours of work on AGMA Security Service, Inc. v. United States, Case No. 20-926C, and the court denies 13.9 hours as unsubstantiated or unreasonable. The court grants Mr. Grayson 101.9 hours for the work that he performed on AGMA Security Service, Inc. v. United States, Case No. 20-926C in this court ($20,729.52), and 19.65 hours for the time he claimed for putting together the initial EAJA fee request, the renewed EAJA fee request, and for litigating the EAJA fee requests ($3,997.40). The court grants Mr. Fuertes 39 hours for the work that he performed on AGMA Security Service, Inc. v. United States, Case No. 20-926C in this court ($7,800.00). In addition, the court finds that AGMA's attorneys are entitled to reimbursement for the $400.00 filing fee. This comes to a total of $32,926.92. Therefore, AGMA's attorneys' application for attorneys' fees and other expenses is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, AGMA's attorneys are entitled to recover attorneys' fees and costs in the amount of $32,926.92.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**